EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ex Parte:<br><br>Asociación de Periodistas de Puerto Rico (ASPRO), El Taller de Fotoperiodismo, Inc., la Asociación de Fotoperiodistas de Puerto Rico y El Overseas Press Club | 2014 TSPR 102<br><br>191 DPR ____ |

Número del Caso: MC-2014-197

Fecha: 29 de agosto de 2014

Abogado de los Peticionarios:

   Lcdo. Carlos E. Díaz Olivo

Materia: Resolución del Tribunal y Resolución Nunc Pro Tunc con Voto de Conformidad  y Voto Particular de Conformidad

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ex Parte:

Asociación de Periodistas de
Puerto Rico (ASPRO), El Taller
de Fotoperiodismo, Inc., La          MC-2014-197
Asociación de Fotoperiodistas
de Puerto Rico y el Overseas
Press Club

*RESOLUCIÓN*

En San Juan, Puerto Rico, a 29 de agosto de 2014.

El 15 de agosto de 2014, la Asociación de Periodistas de Puerto Rico, el Taller de Fotoperiodismo, Inc., la Asociación de Fotoperiodistas de Puerto Rico y el Overseas Press Club (Asociación de Periodistas y otros) comparecieron ante nos mediante una moción denominada *Reiteración de Petición Especial de Autorización para el Uso de Cámaras Fotográficas y Equipo Audiovisual en los Procesos Judiciales al amparo de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico y del Poder Inherente y Constitucional de la Rama Judicial para Regular sus Procedimientos*. Solicitaron que autoricemos la grabación y transmisión por cámaras fotográficas y equipo audiovisual de la vista de sentencia pautada para el 4 de septiembre de 2014 en el caso Pueblo v. Quiñones Rivera.

En su petición, señalan que ésta se presentó oportunamente en esta ocasión, debido a que en el caso de referencia se dictó un fallo de

culpabilidad y la lectura de sentencia está pautada para el 4 de septiembre de 2014.[1]

Examinada la petición, se autoriza, a modo de excepción, la cobertura y transmisión de la referida vista de sentencia según el procedimiento dispuesto a continuación. Resulta determinante el hecho de que estamos en una etapa procesal avanzada, donde ya el Juez dictó un fallo de culpabilidad contra el Sr. Roberto Quiñones Rivera. También pesa en nuestra decisión, el hecho de que la transmisión de la vista de sentencia en los casos Pueblo v. Malavé y Pueblo v. Casellas Toro transcurrieron sin inconvenientes y el derecho a un juicio justo e imparcial no se vio afectado.

La grabación y transmisión en vivo de la vista se hará a través de un sistema portátil que la Oficina de Prensa y Relaciones con la Comunidad de la Oficina de Administración de los Tribunales (Oficina de Prensa) adquirió para este tipo de transmisión. El mismo permite la instalación de cámaras de video en las salas de los tribunales y la transmisión remota de las imágenes captadas por éstas a los distintos medios de comunicación. El Director de la Oficina de Prensa, el Sr. Daniel Rodríguez León, estará encargado de coordinar todo lo relacionado con la grabación y transmisión en vivo de la vista de sentencia mediante este sistema remoto. Todos los interesados deberán coordinar con el señor Rodríguez León para obtener acceso remoto a la transmisión en vivo de la vista.

Por otra parte, a los fines de asegurar la solemnidad y el decoro del proceso judicial, se permitirá únicamente la entrada de dos cámaras de fotografía a ser operadas por un representante de un medio de prensa escrita o digital (internet) y un representante de un medio de televisión respectivamente. El Director de la Oficina de Prensa seleccionará, mediante sorteo, a los medios que podrán tomar fotografías dentro de la sala. Para regular el uso de cámaras fotográficas, hacemos extensivo, de forma

---

[1] El 11 de agosto de 2014, la Asociación de Periodistas de Puerto Rico, el Taller de Fotoperiodismo, Inc., la Asociación de Fotoperiodistas de Puerto Rico y el Overseas Press Club presentaron una *Petición Especial de Autorización Para el Uso de Cámaras Fotográficas y Equipo Audiovisual en los Procesos Judiciales al Amparo de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico y del Poder Inherente y Constitucional de la Rama Judicial para Regular sus Procedimientos*. Solicitaron que autorizáramos la grabación y transmisión del fallo del tribunal y de la lectura de sentencia en el caso Pueblo v. Quiñones Rivera. El 12 de agosto de 2014, este Tribunal emitió una Resolución proveyendo no ha lugar a la petición presentada debido a que se presentó tardíamente en lo que al fallo respecta y era prematura en cuanto a la lectura de sentencia.

excepcional, el Reglamento del Programa Experimental para el Uso de Cámaras Fotográficas y de Equipo Audiovisual de Difusión por los Medios de Comunicación en los Procesos Judiciales (Reglamento). Los gremios periodísticos deberán regirse por las disposiciones pertinentes del Reglamento, siempre y cuando no sean contrarias o incompatibles con lo aquí dispuesto. No se permitirá tomar fotografías mediante el uso de equipo electrónico adicional.

También se permitirá, sujeto a las restricciones impuestas en el Canon 15 de Ética Judicial, 4 LPRA Ap. IV-B, y en el Reglamento:

1. El uso de grabadoras de audio portátiles sujeto a que su operación sea discreta y silenciosa.

2. El uso de computadoras portátiles, teléfonos celulares, tabletas, entre otros dispositivos electrónicos o equipo similar, **para recopilar y transmitir información escrita** a través del internet, siempre que no interfiera con el proceso judicial, su operación sea silenciosa y discreta y **no se utilicen para fotografiar, grabar imágenes o audio, ni para radiodifundir ni televisar.**

Recordamos a los medios de comunicación que, por la solemnidad del proceso judicial, deben ceñirse estrictamente a las disposiciones aplicables del Reglamento y a lo aquí dispuesto.

Publíquese y notifíquese por teléfono, electrónicamente, facsímil y por la vía ordinaria.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. Los Jueces Asociados señores Kolthoff Caraballo y Estrella Martínez emitieron cada uno Votos Particulares de Conformidad. El Juez Asociado señor Feliberti Cintrón concedería un término razonable a las partes envueltas en el caso para expresar su posición respecto a la solicitud presentada, antes de disponer de la misma.

La Juez Asociada señora Rodríguez Rodríguez y el Juez Asociado señor Rivera García no intervinieron.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ex Parte:

Asociación de Periodistas de
Puerto Rico (ASPRO), El Taller
de Fotoperiodismo, Inc., La          MC-2014-197
Asociación de Fotoperiodistas
de Puerto Rico y el Overseas
Press Club

RESOLUCIÓN
(NUNC PRO TUNC)

En San Juan, Puerto Rico, a 29 de agosto de 2014.

Se enmienda *nunc pro tunc* nuestra Resolución del 29 de agosto de 2014 para que el párrafo número cinco(5) lea de la siguiente manera:

"Por otra parte, a los fines de asegurar la solemnidad y el decoro del proceso judicial, se permitirá únicamente la entrada de dos cámaras de fotografía a ser operadas por representantes de medios de prensa escrita o digital (internet). El Director de la Oficina de Prensa seleccionará, mediante sorteo, a los medios que podrán tomar fotografías dentro de la sala. Para regular el uso de cámaras fotográficas, hacemos extensivo, de forma excepcional, el Reglamento del Programa Experimental para el Uso de Cámaras Fotográficas y de Equipo Audiovisual de Difusión por los Medios de Comunicación en los Procesos Judiciales (Reglamento). Los gremios periodísticos deberán regirse por las disposiciones pertinentes del Reglamento, siempre y

cuando no sean contrarias o incompatibles con lo aquí dispuesto. No se permitirá tomar fotografías mediante el uso de equipo electrónico adicional."

Publíquese y notifíquese por teléfono, electrónicamente, facsímil y por la vía ordinaria.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ex Parte:

Asociación de Periodistas de
Puerto Rico (ASPRO), el Taller        MC-2014-197
de Fotoperiodismo, Inc., la
Asociación de Fotoperiodistas
de Puerto Rico y el Overseas
Press Club

Voto de Conformidad emitido por el Juez Asociado señor
Kolthoff Caraballo

San Juan, Puerto Rico, a 29 de agosto de 2014.

No debe existir vacilación o duda alguna con relación al hecho de que la mera presencia de las cámaras de los medios de comunicación en las salas de nuestros tribunales trae consigo luz. Las cámaras de televisión nos aportan luz porque permiten que observemos con claridad y sin intermediarios los procesos en el interior de nuestros salones de vistas. En otras palabras, las cámaras de televisión al iniciar su transmisión alumbran el proceso judicial y obviamente esto redunda en más transparencia, que es algo que en el pasado he insistido necesitamos en nuestro sistema judicial.

Tengo que admitir con profundo dolor que a los ojos de nuestro Pueblo nuestra Rama Judicial se encuentra sufriendo en este momento una seria crisis de legitimación. Que para demasiadas personas la percepción de que muchos de nuestros jueces o juezas son funcionarios al servicio de intereses mal sanos va en aumento. Claro está, situaciones como estas constituyen caldo de cultivo para las injustas generalizaciones e hipérboles. Precisamente por eso creo que, entre otras cosas, **una buena dosis de transparencia en las acciones que ejercemos como Rama es vital para ayudar a amainar esta crisis.**

Y es que, **como si fuera una condición endémica, la figura del juez en Puerto Rico ha carecido de ser más transparente, o sea, de ser más abierta.** Por ejemplo, por demasiado tiempo ha subsistido la percepción de que el Tribunal Supremo es un ente algo misterioso; que deliberadamente sus miembros poco revelamos y, como corolario, poco se conoce con relación a quiénes somos y cómo nos desempeñamos en nuestras funciones públicas. Que, en ocasiones, bajo el manto de la bien concebida "prudencia judicial", yacen aspectos de los cuales -por imperativo moral- los jueces de esta Curia hemos debido opinar, aportando así alguna que otra posible solución ante los retos que enfrenta esta sociedad de la que somos parte.

Pero, más importante aún es el hecho de que todos los jueces, a todos los niveles, somos servidores públicos y,

como tal, estamos obligados a rendir cuentas a nuestro Pueblo. Que el Art. 1, Sec. 2 de nuestra Constitución[2] no solo señala a las ramas políticas como sujetas a la soberanía del Pueblo, sino que también incluye a la Rama Judicial. Por lo tanto, y ante la realidad de que distinto a las ramas políticas el Pueblo al que servimos no tiene la oportunidad de ejercer un juicio directo sobre nuestro desempeño cotidiano, los jueces tenemos la obligación moral de -al menos- propender a mayor apertura en el desempeño de nuestras funciones diarias. **Por eso he insistido en que, en el neto, las luces de las cámaras de los medios de comunicación en nuestras salas, incluyendo el Salón de Sesiones del Tribunal Supremo, son un instrumento que aporta positivamente a esa apertura; a esa transparencia.**

Por otro lado, los jueces debemos aceptar la realidad de que en este nuevo siglo nos ha tocado vivir    -nos guste o no- en una era influenciada como nunca antes por los medios de comunicación.  De hecho, si lo estudiamos con algún detalle, podríamos concluir que la relación entre los medios de comunicación y los tribunales se ha tornado, en cierto sentido, en una relación simbiótica o mutualista, cuyo instrumento más eficaz, pero a la vez de más tensión, es precisamente la cámara de televisión.  Me explico.

Las cámaras de televisión en los tribunales reflejan a la perfección el enlace entre estas dos instituciones tan significativas en nuestra sociedad, como lo son los medios

---

[2] Art. I, Sec. 2, Const. ELA, LPRA, Tomo 1.

de comunicación y el sistema judicial. Como sabemos, los medios de comunicación sirven como la fuente primaria de información al Pueblo, mientras el sistema judicial constituye la fuente primaria para legitimar    -mediante la interpretación de las leyes y la Constitución- aquellos valores y derechos que el Pueblo, directamente o de manera representativa, ha establecido a través de su Constitución y demás estatutos.

Para alcanzar sus respectivos y múltiples objetivos, ambas instituciones han desarrollado una relación con cierto grado de interdependencia. Por ejemplo, en ocasiones los medios de comunicación transforman un evento en una historia noticiosa que repercute en la opinión pública y que pone en sobre aviso los mecanismos del sistema de justicia. De esta manera, los medios de comunicación se constituyen en instrumentos no solo informativos, sino fiscalizadores en favor de los intereses y derechos del Pueblo. Sin embargo, tal fiscalización no tendría sentido si los tribunales, junto a los demás componentes del sistema de justicia y en el marco de un proceso justo e imparcial, no le dieran el debido cauce.

Por otro lado, los tribunales atendemos a menudo asuntos que -de alguna manera- retan los parámetros de la sociedad representados en la ley, la cultura y la política. Entonces, mediante la interpretación de hechos y políticas públicas y dentro del contexto de precedentes judiciales y acciones legislativas, los tribunales afirmamos o

reajustamos esos parámetros sociales conforme a lo que entendemos es el texto de la ley y los principios generales del derecho. **Sin embargo, esta importante función no alcanzaría el eco necesario para hacerse vigente si no fuera por la difusión de los medios de comunicación.**

Claro está, no debemos abusar de la candidez pensando que los medios de comunicación actúan de manera altruista inspirados solo por el deber de informar. Lo cierto es que los medios de comunicación son empresas que hacen de la información su negocio y que, en ocasiones, encuentran en los procesos judiciales mucho "producto que ofrecer". **De manera que, es claro que en esta llamada "era de los medios y de la informática", los tribunales y los medios de comunicación se complementan el uno al otro para atender sus distintas necesidades.**

Aun así, y como ya adelanté, admito que las cámaras de televisión, a pesar de constituir un instrumento efectivo en la consecución de los objetivos de ambas instituciones, crean entre estas una gran tensión. Por eso, y para que esta tensión pueda ser canalizada correctamente, es menester que tanto la Rama Judicial como los medios de comunicación entiendan a conciencia sus respectivas funciones y parámetros.

En primer lugar, los tribunales tenemos que entender y aceptar que necesitamos los medios de comunicación para que con su presencia en nuestras salas, entre otros beneficios,

contribuyan indirectamente a disminuir el problema de la percepción que tiene la ciudadanía respecto al sistema judicial de nuestro País.

Por otro lado y, a su vez, los medios de comunicación tienen que entender y aceptar que mientras ustedes tienen la necesidad de informar, el propósito de nuestros tribunales es otro. Nuestro propósito es asegurar a todo ciudadano un juicio justo e imparcial, más aún en casos criminales (que como regla general son los más mediáticos). Ante esa realidad, las cámaras de los medios de comunicación en los tribunales podrán saciar su necesidad en la medida en que no interfieran con este propósito.

En conclusión, es evidente que los tiempos nos convocan a un ensanche de nuestras fronteras en este tema y no podemos dilatar y mucho menos obviar ese llamado. Por eso, es menester que el avance que se inició el pasado año no mengüe, sino que siga ganando impulso.

Por todo lo anterior, estoy conforme con la determinación que hoy toma la mayoría de este Tribunal.

Erick V. Kolthoff Caraballo
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ex Parte:

Asociación de Periodistas de
Puerto Rico (ASPRO), el Taller       MC-2014-197
de Fotoperiodismo, Inc., la
Asociación de Fotoperiodistas
de Puerto Rico y el Overseas
Press Club

Voto particular de conformidad emitido por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 29 de agosto de 2014.

Aunque estoy conforme con la autorización emitida, resulta imperativo reafirmar que la transparencia que acompaña la transmisión de los procesos judiciales debe ser la norma y no la excepción.

Ante el panorama y los retos que enfrenta la Rama Judicial, reitero la necesidad de agilizar "los esfuerzos simultáneos dirigidos a alcanzar la plenitud de acceso a los procesos judiciales dentro de nuestro esquema constitucional". In re: Establecimiento del Programa Experimental para el Uso de Cámaras Fotográficas y de Equipo

<u>Audiovisual de Difusión por los Medios de Comunicación en los Procesos Judiciales Celebrados en las Salas de Recursos Extraordinarios del Centro Judicial de San Juan</u>, 2013 TSPR 45, Voto particular de conformidad del Juez Asociado señor Estrella Martínez.

El nuevo Canon 15 de Ética Judicial, 4 LPRA Ap. IV-B, extendió inmediatamente a todas las salas, incluyendo las criminales, el uso de computadoras portátiles, teléfonos celulares, tabletas, entre otros dispositivos electrónicos o equipo similar. Obviamente, bajo unas normas que garantizan que tales acciones no interfieran con los trabajos de la sala.

Ante ese avance, al momento de autorizar la histórica transmisión de la lectura de sentencia en el caso de *Pueblo v. Malavé Zayas*, esbocé los argumentos que enmarcan mi postura a favor de la actual petición de la prensa, al señalar que:

> [s]abido es que "... el acusado no es el único acreedor del derecho fundamental a un juicio público, pues la ciudadanía y la prensa también pueden invocarlo para lograr el acceso a dicho procedimiento". <u>Pueblo v. Pepín Cortés</u>, 173 D.P.R. 968, 977 (2008). Los derechos a la libre expresión, asociación y libertad de prensa, garantizados por la Sec. 4 del Art. II de la Constitución de Puerto Rico, L.P.R.A. Tomo 1, y por la Primera Enmienda de la Constitución Federal, así como el derecho de acceso a la información en poder del Estado, requieren que reflexionemos en torno a la realidad social de que ya no puede limitarse la publicidad del juicio a las personas presentes como espectadores. Debemos nutrirnos de la experiencia y de la tendencia mayoritaria a nivel de los Estados Unidos y en múltiples

jurisdicciones democráticas. No podemos obviar que "[l]a asistencia personal y directa a los juicios ha perdido importancia y, en contrapartida, se ha ampliado el círculo de los participantes indirectos a los que la prensa, la radio y la televisión transmiten las noticias judiciales." Si no evolucionamos y reconocemos esta tendencia, sencillamente la naturaleza de la publicidad de los procesos judiciales quedará desvirtuada. Un razonamiento contrario, nos conduciría al absurdo de reconocer que es válido que un periodista escriba y transmita inmediatamente en *twitter* las palabras del juez al dictar la sentencia, pero que esas mismas palabras del juzgador no puedan ser radiodifundidas o televisadas simultáneamente. Más importante aún, no veo la razón por la cual no podamos permitir que el acceso a la información fluya inmediatamente, más allá del sector de la población que disfruta de conexión a la red de internet. Véase <u>Ex Parte: Asociación de Periodistas de Puerto Rico (ASPRO), el Taller de Fotoperiodismo, Inc., la Asociación de Fotoperiodistas de Puerto Rico y el Overseas Press Club</u>, 2013 TSPR 127, Voto particular de conformidad del Juez Asociado señor Estrella Martínez. (Nota al calce omitida).

En ocasión de su comparecencia a la vista de confirmación del Senado de Puerto Rico, la Jueza Presidenta señora Fiol Matta expresó en su ponencia que "hoy Puerto Rico cuenta con una judicatura más accesible, más moderna y más transparente. No obstante, queda mucho por hacer". Ciertamente, queda mucho camino por recorrer.

La adopción de una firme política de apertura a las cámaras y a transmitir en vivo los procesos judiciales, con las correspondientes salvaguardas y protecciones que impone nuestro esquema constitucional, constituye uno de los vehículos que contribuiría a que la Rama Judicial recorra

una parte del trayecto de ese camino. Por eso, aunque estoy conforme con esta autorización, aspiro a que en un futuro cercano existan normas uniformes que permitan a la prensa contar con unos parámetros predeterminados, para propiciar el mayor grado posible de difusión de la información pública que día a día se genera en las salas judiciales.


                                        LUIS F. ESTRELLA MARTÍNEZ
                                                Juez Asociado