EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ex Parte:<br><br>Asociación de Periodistas de Puerto Rico | 2015 TSPR 45<br><br>192 DPR ____ |

Número del Caso:    MC-2015-56

Fecha: 22 de abril de 2015

Materia: Resolución con Votos

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ex Parte:

Asociación de Periodistas de
Puerto Rico

MC-2015-056

RESOLUCIÓN

San Juan, Puerto Rico, a 22 de abril de 2015.

A la solicitud de la Asociación de Periodistas de Puerto Rico, la Asociación de Fotoperiodistas, el Taller de Fotoperiodismo y el Overseas Press Club, no ha lugar.

Notifíquese inmediatamente vía facsímile, por teléfono y por la vía ordinaria.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Martínez Torres emitió un Voto particular de Conformidad al cual se unieron la Jueza Presidenta señora Fiol Matta y el Juez Asociado señor Feliberti Cintrón. El Juez Asociado señor Rivera García emitió un Voto particular de Conformidad. Los Jueces Asociados señores Kolthoff Caraballo y Estrella Martínez emitieron Votos particulares disidentes. La Juez Asociada señora Rodríguez Rodríguez no interviene.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ex Parte:


Asociación de Periodistas de
Puerto Rico

                    MC-2015-0056


Voto particular de conformidad emitido por el Juez Asociado señor MARTÍNEZ TORRES al cual se unieron la Jueza Presidenta señora FIOL MATTA y el Juez Asociado señor FELIBERTI CINTRÓN.



En San Juan, Puerto Rico, a 22 de abril de 2015.

Simpatizo con la postura de la Asociación de Periodistas de Puerto Rico para abrir a los medios audiovisuales las incidencias de los casos penales. Como señalé en ASPRO et al., Ex Parte I, 189 DPR 769, 776 (2013), "el uso de cámaras en los procedimientos penales está más que ensayado en otras jurisdicciones, por lo que no hay que temerle".

En el pasado hemos permitido la presencia de cámaras y la transmisión mediática de eventos posteriores a la convicción. Sin embargo, nunca hemos autorizado la transmisión y la toma de

fotografías en vistas evidenciarias en casos penales. De hecho, cuando autorizamos por primera vez la presencia de cámaras en los procedimientos penales el Juez Presidente Señor HERNÁNDEZ DENTON emitió un voto de conformidad al que me uní junto con el Juez Asociado Señor ESTRELLA MARTÍNEZ. Allí se dijo:

> Claro está, al acceder a lo solicitado, consideramos cuidadosamente que este se encuentra en la etapa de vista de sentencia donde un Jurado deliberó y adjudicó la responsabilidad penal del acusado. **O sea, no estamos ante una petición para transmitir el juicio o la vista preliminar, las cuales son etapas más sensitivas del proceso criminal.** En este sentido, entendemos que mediante la transmisión de dicha vista el acusado no sufrirá un perjuicio y no existe un riesgo de que se afecte la administración de la justicia. Al contrario, sostenemos que se abona a la fiscalización de nuestro sistema al permitir que el proceso de dictar sentencia se divulgue al público de la manera más transparente posible. ASPRO et al., Ex Parte I, íd., pág. 773 (Voto de conformidad; énfasis suplido.)

En el mismo sentido véase el Voto de conformidad del Juez Presidente Señor HERNÁNDEZ DENTON, al que me uní junto al Juez Asociado Señor KOLTHOFF CARABALLO, en ASPRO et al., Ex Parte II, 189 DPR 838 (2013).

Cuando autorizamos la entrada de las cámaras y otro equipo audiovisual a los tribunales dejamos expresamente para una evaluación posterior la transmisión y toma de fotografías en los casos penales. El *Reglamento del Programa Experimental para el uso de Cámaras Fotográficas*

*y Equipo Audiovisual de Difusión por los Medios de Comunicación en los Procesos Judiciales* no contempla la transmisión de vistas evidenciarias en casos penales. Por el contrario, la Regla 3 establece expresamente que el Reglamento "[r]egirá únicamente en los procesos judiciales celebrados en las Salas de Recursos Extraordinarios del Centro Judicial de San Juan." 4 LPRA Ap. XXXV (Supl. 2014).

Nos corresponde hacer esa evaluación de manera sosegada, con el beneficio de los estudios y la experiencia. No me parece que tomar estas determinaciones *ad hoc* nos permita ponderar todos los factores presentes y llegar a una decisión colegiada. Este asunto requiere que el Tribunal paute una regla uniforme y no que tome decisiones caso a caso, aun si las partes se pusieran de acuerdo (lo que no ha ocurrido aquí). Si aprobáramos hoy la transmisión de vistas evidenciarias en casos penales, entonces ¿para qué evaluar lo que ya decidimos?

En mi voto particular de conformidad, al que se unió el Juez Presidente Señor HERNÁNDEZ DENTON, en Int´l Broadcasting Corp., Ex Parte, 189 DPR 834, 837-838 (2013), señalé:

> Como mencioné en ASPRO et al., Ex Parte I, supra, pág. 776, estoy comprometido con "abrir las puertas de la Rama Judicial para mantener informado al Pueblo de Puerto Rico sobre los procedimientos que se desarrollan en nuestros tribunales". No obstante, el trámite necesario para alcanzar ese fin tiene que realizarse de manera organizada. La

transmisión desorganizada de un juicio penal puede incidir sobre los derechos del acusado. Por eso, reglamentar su difusión a través de los medios audiovisuales es un asunto más complicado que difundir un acto de lectura de sentencia, como lo autorizamos en ASPRO et al., Ex Parte I, supra. Ante el impacto que la difusión mediática puede tener sobre el juicio, lo ideal es que todo esto se reglamente en su día, si este Tribunal lo entiende necesario, mediante un protocolo que haga un balance entre la capacidad de mantener informado al público utilizando los nuevos métodos audiovisuales con el derecho del acusado y el interés social en que se conduzca un proceso penal justo e imparcial. **Este no es el momento para improvisar.** (Énfasis suplido.)

Lo que expresé acerca de la transmisión de un juicio en un caso penal aplica por igual a una vista preliminar. Por esa razón, mi voto es para denegar la solicitud de la Asociación de Periodistas de dar acceso a las cámaras a la vista preliminar pautada en este caso penal. Confío que en una fecha cercana el Tribunal culmine su estudio y autorice la presencia de las cámaras en los procesos penales.

RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ex Parte:

Asociación de Periodistas de
Puerto Rico                              MC-2015-056

Voto particular de conformidad emitido por el Juez Asociado señor Rivera García

En San Juan, Puerto Rico, a 22 de abril de 2014.

Estoy conforme con la presente Resolución que hoy certificamos porque la solicitud presentada por la Asociación de Periodistas de Puerto Rico y otros grupos para transmitir en vivo las incidencias de la vista preliminar en el caso Pueblo de Puerto Rico v. Lutgardo Acevedo López, está fuera del alcance de la reglamentación que hasta el momento hemos adoptado. El Canon 15 de Ética Judicial se enmendó con el único propósito de viabilizar la implantación de un plan **experimental** aplicable exclusivamente a los casos civiles que se dilucidarán en la Salas de Recursos Extraordinarios del Centro Judicial de San Juan. Véase In re C. 15; Regl. Uso Cámaras Proc. Jud.,

188 DPR 424 (2013). De hecho, en aquella ocasión expresé claramente que mi voto de conformidad estaba condicionado a que la enmienda al Canon 15 aplicaría únicamente a los procesos judiciales a celebrarse en las salas de recursos extraordinarios del Tribunal de Primera Instancia de San Juan por el término de un año. Cónsono con ello, me reservé el derecho a modificar mi voto si en la eventualidad se consideraba extender o ampliar el programa a otras salas, principalmente si tal decisión incidía sobre los derechos constitucionales que cobijan a nuestra ciudadanía. Es por ello, que en cada una de las peticiones que han presentado distintos grupos periodísticos para que autoricemos la trasmisión en vivo de los procesos judiciales, he expresado que estas no proceden. Véase, e.g., ASPRO et al., Ex Parte I, 189 DPR 769 (2013); ASPRO et al., Ex Parte II, 189 DPR 838 (2013); ASPRO et al., Ex Parte I, 190 DPR 82 (2014); Solicitud ASPRO et al, Ex Parte II, 190 DPR 184 (2014); Ex Parte Asociación de Periodistas de Puerto Rico (ASPRO) et al., res. 29 de agosto de 2014, 2014 TSPR 102, 191 DPR _ (2014).

En lo que respecta al caso particular que hoy atendemos, la petición de los periodistas es prematura, por lo que su aceptación hubiese correspondido a una intervención inadecuada e indebida con la discreción que cobija al Juez del Tribunal de Primera Instancia. Esto porque hasta este momento el Foro Primario tiene ante su consideración una "Moción en solicitud [sic] de

celebración de una vista en privado" presentada por el Ministerio Público, ya que según explica, "la vida y seguridad de uno de sus principales testigos – denominado en las denuncias como *Testigo Cooperados* –, así como la familia, se encuentra en riesgo de sufrir un daño" si es reconocido en una vista pública. Véase, *Moción en Cumplimiento de Orden* presentada por la Oficina de la Procuradora General, pág. 2. Así las cosas, hace bien este Tribunal en no tomar una determinación en el vacío sin tan siquiera conocer las circunstancias particulares que podrían hacer necesario limitar de manera excepcional el acceso del público durante la celebración de la vista preliminar.

Finalmente, debo señalar que aquellos miembros de esta Curia que interesen que se continúe con la transmisión en vivo de los procesos judiciales, deben entonces mover la discusión del *Informe sobre el Uso de Cámaras Fotográficas y Equipo Audiovisual de Difusión para cubrir los Procedimientos Judiciales en Puerto Rico*, de manera que finalmente se adopte un reglamento final en el que se consideren las realidades y dinámicas muy particulares que acontecen en nuestra salas civiles y penales. Ahora bien, mientras eso no suceda, no podemos continuar autorizando **a ciegas** la transmisión de procesos judiciales, sin una correcta medición de potenciales consecuencias, por más bien que hayan funcionado tales proyectos en otras jurisdicciones. Más aún, cuando se trata de autorizar la transmisión de procesos de índole

criminal en etapas tan sensitivas como vista preliminar y juicio en su fondo, las cuales están enmarcadas en un derecho constitucional tan básico e importante como lo es la presunción de inocencia.

Ante esa realidad, resulta preocupante y totalmente desafortunado que algunos miembros de esta Curia promuevan que se utilicen casos penales en etapas tan críticas y cruciales como simples experimentos. Aquí hay unas preocupaciones serias y legítimas – ejemplificadas particularmente en el caso de epígrafe - que bajo ninguna circunstancias deben minarse con ataques infundados desde el podio de presunta "transparencia", motivados principalmente para convencer a una mayoría de los miembros de esta Curia en adoptar posiciones particulares.

Por las razones que anteceden, estoy conforme con la Resolución que hoy emitimos en la que se declara no ha lugar la petición presentada por la Asociación de Periodistas de Puerto Rico y otros grupos periodísticos.

Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ex Parte:

Asociación de Periodistas            MC-2015-56
de Puerto Rico

    Peticionarios

Voto Particular Disidente emitido por el Juez Asociado señor Kolthoff Caraballo

San Juan, Puerto Rico, a 22 de abril de 2015.

En ASPRO et al., Ex parte,[1] expuse que no debía "existir vacilación o duda alguna con relación al hecho de que la mera presencia de las cámaras de los medios de comunicación en las salas de nuestros tribunales trae consigo luz".[2]

De igual forma, también expresé que las cámaras de televisión nos aportan luz "porque permiten que observemos con claridad y sin intermediarios los procesos en el interior de nuestros salones de vistas".[3] En otras palabras,

---

[1] ASPRO et al., Ex parte, res. el 29 de agosto de 2014, 191 DPR ____, 2014 TSPR 102.

[2] Voto de Conformidad del Juez Asociado señor Kolthoff Caraballo en ASPRO et al., Ex parte, supra.

[3] Íd.

las cámaras de televisión al iniciar su transmisión "alumbran el proceso judicial y obviamente esto redunda en más transparencia, que es algo que en el pasado he insistido necesitamos en nuestro sistema judicial".[4]

**En este contexto, entiendo que si existe un caso al que le fuera conveniente agregar ese elemento adicional de transparencia que aportan las cámaras de televisión es el que hoy la Asociación de Periodistas de Puerto Rico (ASPRO) y otros gremios periodísticos nos solicitan transmitir.**

Ciertamente, y distinto a las solicitudes anteriores, el de hoy se trata no solo de un caso criminal, sino de una etapa evidenciaria del proceso como lo es la vista preliminar de causa probable para juicio. Sin embargo, mi postura hoy es consistente con lo que he expresado en el pasado: "mi visión es cada vez más clara y mi posición, como parte de esta Curia, es más firme".[5]

Así, adelanté mi determinación de que "**[c]on la excepción de los asuntos que se dilucidan en las salas de familia y menores, estableciendo las restricciones que se entiendan necesarias, evaluando caso a caso y, sobre todo, concediendo una total discreción a los jueces de instancia, creo que es posible transmitir, incluso de**

---

[4] Voto de Conformidad del Juez Asociado señor Kolthoff Caraballo en ASPRO et al., Ex parte, *supra*.

[5] Voto de Conformidad del Juez Asociado señor Kolthoff Caraballo en ASPRO et al., Ex parte I, 189 DPR 769, 782 (2013).

**forma televisiva, cualquier proceso judicial, en cualquier etapa**".[6] (Énfasis en el original).

Hoy creo aún más que las experiencias de estos dos últimos años nos han preparado suficiente. Creo que nuestros jueces de instancia, en especial aquellos que presiden procesos criminales, son conscientes de la importancia de aceptar este reto que nos impone la necesidad de más transparencia y que están listos -a su vez- para asegurar, caso a caso, y con la herramienta que les provee la discreción judicial, el imperativo constitucional de un juicio justo e imparcial.

Con relación a la situación de que el Tribunal de Primera Instancia pueda tener ante sí una solicitud para que algún segmento de la vista sea privado, en nada cambia mi determinación. El que esta Curia autorice la transmisión solicitada no impide que el foro de instancia utilice su discreción para limitar, suspender e incluso cancelar tal transmisión, cuando el proceso así lo requiera.

En conclusión, y como he señalado antes, "es evidente que los tiempos nos convocan a un ensanche de nuestras fronteras en este tema y no podemos dilatar y mucho menos obviar ese llamado. Por eso, es menester que el avance que se inició [en los pasados años] no mengüe, sino que siga ganando impulso".[7] Por tal razón,

---

[6] Voto de Conformidad del Juez Asociado señor Kolthoff Caraballo en ASPRO et al., Ex parte I, *supra*.

[7] Voto de Conformidad del Juez Asociado señor Kolthoff Caraballo en ASPRO et al., Ex parte, *supra*.

"[c]orresponde a esta Curia, [distinto a la determinación que hoy se toma], mantener una actitud de apertura y un paso de avanzada en este asunto".[8]

Por todo lo anterior, disiento respetuosamente de la determinación de este Tribunal.


                              Erick V. Kolthoff Caraballo
                                    Juez Asociado

---

[8] Voto de Conformidad del Juez Asociado señor Kolthoff Caraballo en ASPRO et al., Ex parte I, *supra*.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*Ex Parte*:

Asociación de Periodistas de
Puerto Rico (ASPPRO)                    MC-2015-056

Voto particular disidente emitido por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 22 de abril de 2015.

Han transcurrido más de dos años desde que enmendamos el Canon 15 de Ética Judicial y aprobamos reglamentación para establecer un programa experimental relacionado con el uso de cámaras y equipo audiovisual en las salas judiciales.[9] En aquella ocasión advertí que la adopción de este Programa no debe detener a este Tribunal en continuar con los **esfuerzos simultáneos** dirigidos a alcanzar la plenitud de acceso a los procesos judiciales dentro de nuestro esquema constitucional. Los pasos de este Tribunal tienen que cobrar mayor agilidad en el transcurso hacia "la reformulación de la

---

[9]*Véase In re*: C. 15; Regl. Uso Cámaras Proc. Jud., 188 DPR 424 (2013).

reglamentación del **acceso a los medios de comunicación a todos los procesos judiciales**. Claro está, con las salvaguardas necesarias para amparar a determinados actores del tracto legal, cuya protección es imprescindible para el descubrimiento de la verdad".[10]

Luego de dos años de experimentar, estudiar, analizar y de haber recibido el asesoramiento del Secretariado de la Conferencia Judicial y Notarial, respetuosamente considero que resulta imperativo realizar un esfuerzo simultáneo adicional dirigido a conceder la petición de la prensa. A fin de cuentas, "el uso de cámaras en los procedimientos penales está más que ensayado en otras jurisdicciones, **por lo que no hay que temerle**".[11] Lamentablemente, habiendo transcurrido dos años de estudio y análisis sosegado, una Mayoría de este Tribunal estima no adoptar la tendencia en las sociedades democráticas de promover la norma general de la divulgación de los procedimientos penales en las salas de justicia.

Consecuente con mis pronunciamientos previos, reitero que la transmisión de los procedimientos judiciales facilita el acceso a la información, la transparencia proactiva y constituye un valioso

---

[10]*Véase* Voto particular de conformidad del Juez Asociado señor Estrella Martínez emitido en *In re*: C. 15; Regl. Uso Cámaras Proc. Jud., 188 DPR 424, 445-446 (2013). (Énfasis suplido).

mecanismo de prevención de corrupción en el sistema judicial y en las fuerzas del orden público. Por ello, la transmisión transparente de los procesos judiciales debe ser la norma y no la excepción. El carácter excepcional debe reservarse para las situaciones en que el juzgador que preside los procesos dictamine que en virtud de intereses constitucionales de mayor valor procede prohibir o limitar la transmisión, según las facultades que le reconocimos en la Regla 5(b) de la reglamentación que al presente ha regido las autorizaciones de este Tribunal para la transmisión de vistas judiciales en las salas penales. De igual forma, el Canon 15 de Ética Judicial establece, en su parte pertinente, que "el juez o la jueza podrá restringir o limitar la transmisión en directo de lo que acontece durante el proceso judicial si determina que afectará el logro de un juicio justo e imparcial o la sana administración de la justicia". 4 LPRA Ap. IV-B, C. 15. Es decir, el juez que preside el proceso penal cuenta con las herramientas para atender planteamientos de derecho que puedan formular las partes en el proceso penal.

Como cuestión de hecho, el *Informe sobre el Uso de Cámaras Fotográficas y Equipo Audiovisual de Difusión para cubrir los Procedimientos Judiciales en Puerto*

---

[11]*Véase* Voto particular de conformidad del Juez Asociado señor Martínez Torres emitido en <u>ASPRO *et al.*, Ex Parte</u> I, 189 DPR 769, 776 (2013). (Énfasis suplido).

*Rico*[12] y el asesoramiento del Secretariado de la Conferencia Judicial y Notarial nos han provisto de mecanismos concretos y efectivos que se utilizan en otras jurisdicciones para efectuar un adecuado balance entre los intereses y derechos constitucionales de todos los participantes del proceso penal en cada caso particular.

Otras jurisdicciones han podido establecer un adecuado balance entre los derechos constitucionales a la libertad de prensa, a un juicio rápido y público, y a la ventilación de un juicio ante un jurado imparcial, entre otras consideraciones de primer orden. Puerto Rico también puede hacerlo.

Los sectores que se oponen a la petición de la prensa varían desde los que desean conservar el sistema actual de restricciones hasta los que simpatizan con el reclamo, pero justifican su negativa a la petición a la prensa por supuestamente ser necesaria una mayor evaluación.

Los que tienen una visión de negar el acceso a la prensa y aducen que la lucha contra la criminalidad se afectará, ciertamente no han analizado las experiencias y

---

[12] *Véase Informe sobre el Uso de Cámaras Fotográficas y Equipo Audiovisual de Difusión para cubrir los Procedimientos Judiciales en Puerto Rico,* http://www.ramajudicial.pr/sistema/supremo/conferencia/otros/Informe-Uso-Camaras-Fotograficas-Equipo-Audiovisual-Difusion-para-cubrir-los-Procedimientos-Judiciales-en-Puerto-Rico-septiembre-2011.pdf.

estudios científicos de otras jurisdicciones. A ellos les pregunto: ¿conservar qué? ¿Acaso quieren seguir conservando las altas tasas de criminalidad que imperan en nuestra jurisdicción? Por décadas hemos hecho lo mismo, lo mismo, lo mismo. ¿O realmente será que quieren conservar la "secretividad judicial" y la comodidad de que no se fiscalicen los procedimientos judiciales penales y no se ponga la palabra en la acción en lo atinente al acceso y la transparencia?

A los que argumentan la necesidad de mayor evaluación, pues que pongan la palabra en la acción y experimenten con este caso. Qué mejor ejemplo de transparencia que ejercer la facultad que nos confiere el Canon 15, autorizando la petición de la prensa en un caso criminal en el que está involucrado el primer juez estatal convicto por actos de corrupción judicial.

Es hora de que este Tribunal le hable claro a la comunidad jurídica y a la sociedad en general. Si no favorecen la transmisión de casos en procesos penales que lo digan a los cuatro vientos.

De mi parte, estoy ávido de aprobar reglamentación que brinde mayor certeza y uniformidad, pero la ausencia de la misma no es impedimento para realizar esfuerzos adicionales simultáneos, bajo los parámetros aquí expuestos, dirigidos a autorizar la petición de la prensa. Ciertamente, lo que sí es impedimento es la ausencia de voluntad de acción inmediata de este Tribunal.

En fin, cónsono con mi consecuente criterio ante peticiones similares como las que nos ocupa,[13] disiento de la determinación de no permitirle acceso de la prensa al proceso judicial en cuestión.


                                        Luis F. Estrella Martínez
                                             Juez Asociado

---

[13] *Véanse* Voto particular de conformidad del Juez Asociado señor Estrella Martínez emitido en ASPRO *et al., Ex parte* I, 2014 TSPR 102, 191 DPR ___ (2014); Voto particular de conformidad del Juez Asociado señor Estrella Martínez emitido en Solicitud ASPRO et al, *Ex parte* II, 190 DPR 184 (2014); Voto particular disidente del Juez Asociado señor Estrella Martínez emitido en ASPRO *et al., Ex parte* I, 190 DPR 82 (2014); Voto particular de conformidad del Juez Asociado señor Estrella Martínez emitido en ASPRO *et al., Ex parte* I, 189 DPR 769 (2013).