EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>Enmiendas al Reglamento del Programa Experimental para el Uso de Cámaras Fotográficas y Equipo Audiovisual de Difusión por los Medios de Comunicación en los Procesos Judiciales | 2015 TSPR 92<br><br>193 DPR ____ |

Número del Caso: ER-2015-6

Fecha: 15 de julio de 2015

Materia: Resolución del Tribunal con Votos

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

Enmiendas al Reglamento del
Programa Experimental para
el    Uso    de    Cámaras
Fotográficas    y    Equipo        ER-2015-06
Audiovisual de Difusión por
los Medios de Comunicación
en los Procesos Judiciales

*RESOLUCIÓN*

En San Juan, Puerto Rico, a 15 de julio de 2015.

En virtud de la Ley de la Judicatura del Estado
Libre Asociado de Puerto Rico de 2003, Ley Núm. 201
de 22 de agosto de 2003, 4 LPRA Sec. 24 *et. seq.*, el
19 de abril de 2013 emitimos la Resolución ER-2013-1
para adoptar un nuevo Canon 15 sobre *Solemnidad de
los Procedimientos; Fotografías, Video, Grabación y
Transmisión*. Mediante esa Resolución también
implantamos el *Programa Experimental para el Uso de
Cámaras Fotográficas y de Equipo Audiovisual de
Difusión por los Medios de Comunicación en los
Procesos Celebrados en las Salas de Recursos
Extraordinarios del Centro Judicial de San Juan*
(PECAM) y aprobamos el *Reglamento del Programa
Experimental para el Uso de Cámaras Fotográficas y
de Equipo Audiovisual de Difusión por los Medios de
Comunicación    en    los    Procesos    Judiciales*.[1]

_____

[1] In re Reglamento del Programa Experimental para el Uso
de las Cámaras Fotográficas y Equipo Audiovisual de
Difusión por los Medios de Comunicación en los Procesos
Judiciales y enmienda al Canon 15 de Ética Judicial, 188
DPR 424 (2013).
La Regla Núm. 12 del Reglamento del PECAM autorizó a la
"Directora Administrativa o al Director Administrativo de
los Tribunales a emitir cualquier directriz que fuera
necesaria para el mejor funcionamiento del programa
experimental establecido… e implantar cualquier medida u
orden administrativa con el fin de cumplir con las
disposiciones contenidas en [el Reglamento]".

El PECAM entró en vigor el 1 de julio de 2013. Al año de vigencia del Programa Experimental, y con el propósito de cumplir con la encomienda dada por este Tribunal, el Secretariado de la Conferencia Judicial y Notarial evaluó su efectividad y emitió un Informe.

Con el beneficio de ese Informe, y al amparo de lo dispuesto en el Canon 15 de Ética Judicial, mantenemos el PECAM de forma indefinida en las Salas de Recursos Extraordinarios del Centro Judicial de San Juan. Además, con el objetivo de brindar mayor acceso de la ciudadanía a su sistema de justicia y fomentar la transparencia de los procesos judiciales, extendemos el PECAM a la Sala 901 de Asuntos de lo Civil del Centro Judicial de San Juan y a la Sala 1104 de Asuntos de lo Criminal del mismo Tribunal. Cualquier otra extensión del Programa Experimental a salas adicionales, se hará mediante resolución de este Tribunal sin necesidad de enmendar el Reglamento para ese solo propósito.

De acuerdo con el Art. 2.008 de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, 4 LPRA sec. 24i, también le ordenamos a la Directora Administrativa de los Tribunales que presente un plan para institucionalizar la transmisión de procesos judiciales con propósitos educativos en o antes del 30 de septiembre de 2015.[2]

En vista de ello, se enmiendan las Reglas 3 y 4 del Reglamento del Programa Experimental. Lo eliminado está tachado y el texto nuevo se incluye en la modalidad de itálicas.

**REGLA 3. APLICACIÓN**

Este Reglamento autoriza, a manera de proyecto experimental, la cobertura electrónica de los procesos judiciales mediante la toma de fotografías y la grabación de audio e imágenes, y su reproducción y difusión por los medios de comunicación. Regirá únicamente en los procesos judiciales celebrados en las Salas de Recursos Extraordinarios del Centro Judicial de San Juan*, en aquellas otras salas*

---

[2] El Art. 2.008 de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, 4 LPRA sec. 24i, obliga al Juez Presidente del Tribunal Supremo de Puerto Rico a "desarrollar programas y materiales de educación pública, dirigidos a proveer conocimiento básico sobre el sistema de tribunales, facilitar el entendimiento de las controversias legales, ofrecer información sobre los procesos civiles y criminales, orientar a la ciudadanía sobre sus derechos y responsabilidades, así como sobre la disponibilidad de métodos alternos para la solución de conflictos".

*identificadas por el Tribunal Supremo mediante Resolución y cuando el Tribunal Supremo lo autorice conforme a lo dispuesto en la Regla 15 de este Reglamento.*

**REGLA 4. DEFINICIONES**

Los siguientes términos tendrán el significado que se expresa a continuación:

[…]

j. Proceso judicial- ~~comprende, sin limitarse, a la celebración de vistas de estado de los procedimientos, vistas argumentativas, conferencias con antelación al juicio y vistas en su fondo de aquellos asuntos y recursos en materia civil asignados en las Salas de Recursos Extraordinarios del Centro Judicial de San Juan.~~

*i. En materia civil se extiende, sin limitarse, a la celebración de vistas de estado de los procedimientos, vistas argumentativas, conferencias con antelación al juicio y vistas en su fondo de aquellos asuntos y recursos asignados en las Salas a las cuales aplique este Reglamento conforme a la Regla 3.*

*ii. En materia criminal comprende únicamente la celebración de juicios por tribunal de derecho, lecturas de fallo y vistas de lectura de sentencia.*

A los fines de atender algunas deficiencias del Programa Experimental, señaladas por el Secretariado en su Informe, también se enmiendan las Reglas 6, 8, 9 y 10 del Reglamento del Programa Experimental. Lo eliminado está tachado y el texto nuevo se incluye en la modalidad de itálicas.

**Regla 6. Petición**

(a) Todo medio de comunicación que interese tomar fotografías o grabar imágenes y audio con el propósito de difundir un proceso judicial deberá presentar una petición por escrito para utilizar cámaras fotográficas y/o equipo audiovisual de difusión dentro del salón del tribunal. Dicha petición ~~será completada~~ *se completará* en el formulario provisto para ello y ~~presentada~~ *se presentará* en la Secretaría del Centro Judicial de San Juan *o se enviará por correo electrónico* por lo menos diez (10) días antes de la fecha asignada en el calendario para el inicio del proceso~~, o tan pronto advenga en conocimiento del~~

~~mismo~~. *En casos extraordinarios, se podrá presentar la petición tan pronto el medio de comunicación advenga en conocimiento del señalamiento.* El tribunal podrá aceptar peticiones luego de iniciado el proceso o que no cumplan con dicho término, si determina que existe causa justificada para ello.

[…]

*(d) Los medios de comunicación deberán presentar una nueva petición cuando el proceso judicial continúe en una fecha posterior, exceptuándose los recesos normales, los fines de semanas y los días de fiesta legal.*

### Regla 8. Restricciones

[…]

(d) No se autorizará la cobertura electrónica de los procedimientos celebrados en cámara *ni tomas de video o de fotografía cercanas al rostro (close-ups) de cualquiera de los participantes en un procedimiento judicial con cobertura electrónica.*

(e) Solo se permitirá la transmisión en vivo o en directo de cualquier etapa de las vistas del proceso judicial ~~o sus recesos~~, por radio, televisión e Internet o por algún medio de transmisión análogo, mediante la autorización expresa del tribunal, previa solicitud específica al respecto y siempre que no se afecten los procedimientos ni los derechos de las partes ni el acceso del público y de los funcionarios o funcionarias a la sede del tribunal.

f. No se permitirá realizar entrevistas para la difusión ni tomar fotografías en los pasillos adyacentes a la entrada del salón donde se lleva a cabo el procedimiento o donde se estén efectuando otros procesos judiciales. Solo se permitirá en las áreas designadas para ello, que deben ser áreas retiradas de las entradas a los salones del tribunal (por ejemplo, en áreas cercanas a los elevadores o al final de los pasillos); ello de conformidad con ~~el Protocolo para Facilitar el Acceso de la Prensa a los Tribunales de Puerto Rico y el Acceso a la Información sobre los Procesos Judiciales, en vigencia desde el 29 de junio de 2006~~ *la directriz u orden administrativa que regule el asunto.*

### Regla 9: Conferencia de abogados(a), materiales

Para proteger el privilegio abogado(a)-cliente y el derecho de las partes a recibir representación

legal en forma efectiva, no se permitirá la toma de fotografías ni grabar o difundir imágenes o audio durante los recesos *decretados luego de iniciado el proceso judicial* ni durante las conferencias que se efectúen en el salón o en cámara, entre la representación legal de las partes, entre abogados(as) y sus clientes, entre representantes legales de un mismo cliente o entre el abogado o la abogada y el juez o la jueza en el estrado. Tampoco estará permitido tomar video o fotos de los materiales o los documentos localizados en las mesas de dichos abogados o abogadas.

**Regla 10: Conducta y Tecnología**

(a) Equipo técnico y personal

(1) (i) […]

(ii) Dos (2) fotógrafos con una (1) cámara fotográfica ~~fija (con trípode)~~ cada uno, con no más de dos lentes por cada cámara. Más de dos fotógrafos, con el mismo equipo, pueden ser admitidos a discreción del juez o de la jueza que preside el proceso.

(2) En el caso de grabaciones de imágenes con audio solo se permitirá el uso de un sistema de audio, preferiblemente el sistema que al momento del proceso exista en el salón del tribunal. Si este resulta inadecuado, será responsabilidad de los medios de comunicación instalar los micrófonos y el alambrado necesario en los lugares que asigne el juez o la jueza o la funcionaria o el funcionario designado antes de dar comienzo al proceso judicial. ~~Ninguna grabación se transmitirá en directo o en vivo.~~

[…]

Con el propósito de atender de forma ordenada y uniforme las solicitudes de cobertura electrónica en las salas a donde no se ha extendido el PECAM, se adopta una nueva Regla 15 para que lea como sigue:

**Regla 15. ~~Vigencia~~ *Cobertura de procesos judiciales en salas adicionales***

*Los medios de comunicación interesados en la cobertura electrónica de procesos judiciales celebrados en las salas a donde no se ha extendido el Programa Experimental, podrán solicitar autorización al Tribunal Supremo mediante una moción presentada al*

*menos veinte (20) días antes de la fecha asignada en el calendario para el inicio del proceso. En casos extraordinarios, los medios de comunicación podrán presentar la petición tan pronto advengan en conocimiento del señalamiento. Al momento de presentar la solicitud, deberán certificar que han notificado copia de la solicitud a las partes del caso y al juez o la jueza que preside el proceso judicial. Las partes, a su vez, tendrán cinco (5) días, contados a partir de la notificación, para expresarse al respecto. El Tribunal Supremo, mediante Resolución, determinará si autoriza o rechaza la solicitud.*

### Regla 16. Vigencia

[...]

El Secretariado de la Conferencia Judicial y Notarial deberá evaluar la efectividad del Programa Experimental nuevamente al cumplirse un año a partir de la fecha de vigencia de estas enmiendas. Concretamente, examinará si las enmiendas al Reglamento subsanan las deficiencias en el proceso y analizará la efectividad del uso de cámaras fotográficas y equipo audiovisual de difusión por los medios de comunicación en los procesos judiciales llevados a cabo en las salas ordinarias a la cuales se extienden los mismos.

Las enmiendas al Reglamento y la extensión del PECAM a la Sala 901 de Asuntos de lo Civil del Centro Judicial de San Juan y a la Sala 1104 de Asuntos de lo Criminal del mismo Tribunal, entrarán en vigor el 1 de septiembre de 2015. Se le ordena a la Directora Administrativa de los Tribunales que enmiende o emita cualquier directriz, medida u orden administrativa que sea necesaria para implantar el Reglamento según enmendado.

Publíquese.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Presidenta señora Fiol Matta emite Voto particular. El Juez Asociado señor Martínez Torres emite Voto particular de conformidad. El Juez Asociado señor Rivera García emite Voto particular de conformidad en parte y disidente en parte al cual se le unen la Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Feliberti Cintrón. El Juez Asociado señor Feliberti Cintrón hace constar la siguiente expresión:

"El Juez Asociado señor Feliberti Citrón está esencialmente conforme con la Resolución

ER-2015-06, pero respetuosamente disiente de aquella parte de ésta en la cual se permite la cobertura mediática, según provista en la Regla 3, en los casos criminales durante la celebración de juicio, indistintamente de que éste se lleve a cabo por tribunal de derecho o ante jurado".

El Juez Asociado señor Estrella Martínez emite Voto particular. La Jueza Asociada Oronoz Rodríguez emite Voto particular de conformidad al cual se le une el Juez Asociado señor Martínez Torres. La Juez Asociada señora Rodríguez Rodríguez no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Enmiendas al Reglamento del Programa Experimental para el Uso de Cámaras Fotográficas y Equipo Audiovisual de Difusión por los medios de Comunicación en los Procesos Judiciales

ER-2015-06

Voto particular emitido por la Jueza Presidenta SEÑORA FIOL MATTA

En San Juan, Puerto Rico, a 15 de julio de 2015.

Durante la época moderna, y más agudamente en la contemporánea, las formas de comunicación y, por ende, la manera en que las personas interactuamos se han transformado dramáticamente. Desde las reuniones, paseos y pláticas en las plazas de los pueblos de la sociedad post-industrial hasta la interacción cibernética mediante la red de Internet, no cabe duda que la humanidad se ha reinventado. Esto nos atañe en la Rama Judicial de múltiples formas. Hoy limito mis expresiones al ámbito de la publicidad post moderna del proceso judicial, a la transmisión digital del juicio.

Como todos sabemos, en Puerto Rico la mayoría de los procesos judiciales son públicos.[3] Solo unos pocos se consideran confidenciales por la naturaleza de la controversia o las partes involucradas. Hasta hace poco, menos de dos años, el acceso a un procedimiento judicial se limitaba a que las puertas de los tribunales y de las salas estuviesen abiertas a cualquier persona que quisiera entrar y sentarse a escuchar, aunque no estuviese involucrado en la controversia directamente.[4] Esa apertura física y temporal de las cortes es acorde a lo que conocemos como la comunidad real tradicional que está limitada tanto por el espacio físico como por el temporal, a diferencia de la comunidad virtual que se desarrolla en el terreno cibernético.

Reconocemos que es imperativo que los ciudadanos y residentes de un país tengan acceso a la información manejada por el gobierno y a los procedimientos relacionados, para promover la vida participativa en los asuntos del Estado. En su Informe del 2002, la Relatoría Especial para la Libertad de Expresión en el ámbito de la Comisión Interamericana de Derechos Humanos afirmó que "el

---

[3] El carácter público de las vistas judiciales responde a un derecho del procesado a tener un juicio público, mientras que, según este Tribunal ha interpretado, el público y la prensa tienen un derecho de acceso a los procedimientos. Véase: Art. 2, Sec. 11, Const. Del E.L.A., L.P.R.A., Tomo 1, ed. 2008, págs. 342-344; Pueblo v. Eliecer Díaz, 183 DPR 167 (2011).

[4] Claro está, cualquier individuo que de esta forma entra a una sala del tribunal está obligado a guardar ciertas normas de conducta para que no se afecte la solemnidad y seriedad del proceso.

derecho de acceso a la información se constituye como herramienta legal para alcanzar la transparencia de los actos del Estado como así también como medio de fiscalización y participación efectiva de todos los sectores de la sociedad sin discriminación".[5]

Ahora bien, la impresionante revolución de las telecomunicaciones y las formas virtuales de interacción nos han exigido reflexionar en torno a sí la apertura física de las salas de los tribunales es suficiente para asegurar un acceso real a los procesos judiciales. Hemos comenzado, entonces, a analizar y experimentar con la transmisión de los juicios y otros procedimientos judiciales a través de la televisión y el Internet, entre otros medios de difusión.

Mediante la Resolución ER-2013-1 del 19 de abril de 2013, este Tribunal Supremo adoptó unánimemente un Canon 15 de Ética Judicial nuevo y aprobó el Programa Experimental para el Uso de Cámaras Fotográficas y de Equipo Audiovisual de Difusión por los Medios de Comunicación en los Procesos Celebrados en las Salas de

---

[5] Informe del Relator Especial para la Libertad de Expresión en las Américas, Los cinco primeros informes de la Relatoría para la Libertad de Expresión, Instituto Americano de Derechos Humanos, 2003, Capítulo VI, Libertad de Expresión y Pobreza, pág. 243, refiriéndose a A. Chirino, Ley Modelo de Acceso a Información Administrativa para la Prevención de la Corrupción, Departamento de Cooperación y Difusión Jurídica, Taller Técnico Regional, Guatemala, Ciudad de Antigua, OEA, 2000, pág. 11, en http://www.iidh.ed.cr/IIDH/media/1997/libertad-de-expresion-en-las-americas-2003.pdf (última visita en 15 de junio de 2015).

Recursos Extraordinarios (PECAM).[6] En la misma Resolución adoptamos el Reglamento que regiría el Programa. Este, a su vez, autorizó a la Directora Administrativa de los Tribunales a emitir cualquier directriz e implantar cualquier medida u orden para que el PECAM funcionara conforme a las disposiciones reglamentarias.[7]

Cumplido el año de la vigencia del PECAM y contando con el beneficio de la evaluación que llevó a cabo el Secretariado de la Conferencia Judicial y Notarial, hoy extendemos el Programa Experimental a dos salas ordinarias, una civil y otra criminal, en el Centro Judicial de San Juan. De esa forma, serán cuatro las salas del Tribunal de Primera Instancia que podrán permitir la transmisión directa de sus procedimientos sin necesidad de autorización previa del Tribunal Supremo. Además, atendemos las deficiencias procesales identificadas en la implantación del PECAM durante su primer año. Regulamos, a su vez, la presentación de las peticiones de transmisión de procedimientos en las demás salas de nuestros tribunales, para facilitar el acceso de los medios a estas a la vez que se protegen los derechos de las partes. Por último, le ordenamos a la Directora Administrativa de la Oficina de Administración de Tribunales que presente un

---

[6] Véase: In re Reglamento del Programa Experimental para el Uso de Cámaras Fotográficas y de Equipo Audiovisual de Difusión por los Medios de Comunicación en los Procesos Judiciales y enmienda al Canon 15 de Ética Judicial, 188 DPR 424 (2013).

[7] Íd., Regla Núm. 9.

plan para institucionalizar la transmisión de procesos judiciales con propósitos educativos.

Nuestra decisión de extender el Programa Experimental a tan solo dos salas adicionales responde a la necesidad de evaluar cómo funciona la transmisión de los procesos judiciales ordinarios, con el fin de tener indicadores para diseñar unas reglas particularizadas que permitan balancear los intereses en juego y evitar así la violación de derechos humanos u otros intereses importantes. La extensión se hace igualmente de forma experimental, por lo que, al transcurrir un año, el Secretariado evaluará nuevamente el Programa conforme este queda constituido en la Resolución que hoy emitimos.

En su Informe, que fue entregado en diciembre de 2014, el Secretariado determinó, de forma general, que permitirle a la ciudadanía observar procesos judiciales sin la intervención de terceros, a través de la televisión u otros medios de comunicación, contribuyó a la transparencia de nuestros procesos.[8] También promovió la educación de la gente sobre los procesos judiciales.

---

[8] Según dispuso la Resolución ER-2013-1, se hizo un estudio con la participación de distintas personas y sectores entre los cuales se destacan los jueces y las juezas, los abogados y abogadas y los medios de comunicación, para determinar si el uso de las cámaras fotográficas y de equipo audiovisual de difusión por los medios de comunicación adelantó el acceso de la ciudadanía a los procesos judiciales, promovió la transparencia del sistema de justicia y aumentó la confianza del pueblo en la judicatura. Además, se examinó si la tecnología mencionada afectó el derecho a un juicio justo e imparcial, interrumpió los procesos judiciales o menoscabó la sana administración de la justicia.

Conforme indicaron los abogados y abogadas que participaron en el estudio, esto aumentó la confianza del pueblo en su sistema de justicia sin entorpecer el desarrollo solemne y ordenado de los procesos judiciales ni menoscabar los derechos constitucionales y estatutarios de las partes.

No obstante, el Informe también señaló preocupaciones serias y válidas de los participantes, relacionadas, primordialmente, a la seguridad y la intimidad de las personas que participan en los procesos que se transmiten y al derecho a la imagen. Con relación a la transmisión de los procesos criminales, se destaca la posibilidad de que los testigos en estos casos decidan no participar en una vista o, más aun, se inhiban de ofrecer información sobre delitos a las autoridades por miedo a tener que testificar ante los medios de difusión.

En los procesos judiciales comúnmente están en juego la libertad, la propiedad y hasta la reputación de personas tanto públicas como privadas. En vista de la realidad sensitiva de muchas de las situaciones que se presentan ante nuestros tribunales, estamos obligados a proteger a las personas, su integridad y dignidad. La Resolución que hoy emitimos permitirá la producción de la información necesaria para lograr el justo balance entre el acceso a los procesos judiciales y la protección de los derechos e intereses individuales.

La realidad es que, si no llevamos a cabo un programa experimental en las salas ordinarias, nunca tendremos la información necesaria para implantar normas permanentes que sean efectivas en todo el sistema de tribunales. Además, al limitar el Programa a dos salones ordinarios, el personal facilitador de la Oficina de Administración de Tribunales y nuestro equipo técnico podrá ofrecerle a los jueces y juezas que presidan las salas seleccionadas, así como a las partes y testigos, una atención más directa y oportuna.

La extensión del Programa Experimental nos permitirá también intensificar durante este año nuestros esfuerzos para educar sobre el tema de la transmisión de los procesos judiciales, tanto a los jueces y funcionarios de la Rama Judicial como a los periodistas y demás ciudadanos. Al día de hoy ya hemos celebrado conversatorios y talleres entre la prensa y la judicatura. Sin embargo, la Academia Judicial Puertorriqueña está trabajando en un currículo específico y estructurado que permita una expansión coherente y organizada.

Tenemos interés en que los jueces y las juezas, nuestros funcionarios y funcionarias y otros profesionales relacionados al sistema de justicia adquieran conocimientos de teorías comunicacionales para que puedan comprender el objeto de la noticia, su estructura, su relato y la necesidad inmediata de la prensa de informar con lenguaje sencillo a un público ávido de saber qué pasa

en un determinado proceso antes, durante y luego de que se dicte sentencia.[9]  Más aun, es menester que nuestra judicatura entienda esta apertura como una oportunidad para explicarle a la gente lo que hacemos, de una forma clara y directa.  La comunicación directa a través de la transmisión de los procesos ofrece al juez o la jueza un espacio para lograr que el pueblo entienda lo que se decide.  De esta manera, al entender mejor los procesos judiciales, la ciudadanía los respetará, aunque no esté de acuerdo con alguna decisión particular, porque comprenderá que al tomar esa decisión, el juez o la jueza actuó de manera fundamentada.

Igualmente queremos relacionar y acercar al comunicador social al ambiente y las costumbres judiciales, para que aquellos periodistas que transmiten información sobre los procedimientos judiciales a nuestra ciudadanía tengan un conocimiento básico de nuestros procesos.  Esto es esencial, pues el papel fundamental de la prensa, al ser el medio profesional que investiga, recibe y difunde información sobre los actos públicos de los tres poderes del Estado,[10] le impone la responsabilidad

---

[9] Para una discusión detallada sobre la importancia de que tanto la judicatura como los periodistas conozcan el rol del otro, véase, M. Larrondo, El derecho de acceso a la información pública judicial, Revista La Ley, Sup. Act. 11/3/08, Año LXXII Núm. 50 en http://perio.unlp.edu.ar/sites/default/files/larrondo.doc (última visita en 15 de junio de 2015).

[10] Íd.

de informar correctamente a la ciudadanía como también la de emitir críticas fundamentadas.

En resumen, nuestro propósito al expandir el PECAM como lo hacemos hoy es obtener los indicadores y la información adicional necesaria para lograr ese punto de equilibrio que permita la subsistencia armónica, tanto del derecho a "saber lo que pasa" en una causa judicial a través de las formas modernas de comunicación, como del respeto al debido proceso y a la dignidad humana.[11] Queremos crear un canal de comunicación ágil, flexible, dinámico y de fácil comprensión entre la opinión pública y el Poder Judicial, sin que ello interfiera o de alguna manera influya en el desarrollo del proceso judicial perjudicando a cualquiera de las partes o generando presión al juzgador.[12] Queremos evitar que la comunicación periodística de los actos de los jueces de lugar a malos entendidos o interpretaciones equivocadas.

Al fin y al cabo, todo este esfuerzo está dirigido a que nuestros ciudadanos puedan tener acceso efectivo a una información que es inherentemente compleja, pues a pesar de nuestros esfuerzos por simplificarlos, los procesos judiciales, así como el lenguaje utilizado por abogados y jueces, no pocas veces son de difícil comprensión. En la misma dirección de promover la educación de nuestra gente, en la Resolución que hoy certificamos le solicitamos a la

---

[11] Íd.

[12] Íd.

Directora Administrativa de la Oficina de Administración de Tribunales que prepare un plan para institucionalizar este Programa, no con fines únicamente comunicacionales sino también con el objetivo de enseñar sobre los procedimientos judiciales de una manera clara y asertiva. Esperamos dentro de poco poder transmitir, no solamente procesos de alto interés público, sino aquellos que comprendan asuntos importantes de derecho que permitan instruir al pueblo sobre lo que ocurre en nuestros tribunales día a día.

Al expresar mi conformidad con la Resolución aprobada en el día de hoy, reafirmo mi compromiso tanto con la educación como con la transparencia en las operaciones administrativas y en la función judicial, cumpliendo siempre nuestra obligación de proteger los derechos e intereses de quienes acuden a nuestras salas.

Liana Fiol Matta
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


In re:


Enmiendas al Reglamento del
Programa Experimental para el          ER-2015-06
Uso de Cámaras Fotográficas y
Equipo Audiovisual de Difusión
por los Medios de Comunicación
en los Procesos Judiciales


Voto particular de conformidad emitido por el Juez Asociado señor
MARTÍNEZ TORRES.


En San Juan, Puerto Rico, a 15 de julio de 2015.

Desde que juramenté como Juez Asociado en el año 2009 expresé que debíamos movernos a permitir la transmisión electrónica de los procedimientos judiciales en aras de promover la transparencia en el desempeño de nuestras funciones y lograr que los ciudadanos se enteraran de cómo se atienden sus causas en los tribunales de la Isla. ASPRO et al., Ex parte I, 189 DPR 769, 776 (2013) (Martínez Torres, Voto particular de conformidad) (citando Ceremonia de Juramentación, 175 DPR XCVII (2009)). Hace ya más de dos años que dimos un gran primer paso en esa dirección y enmendamos el Canon 15 de Ética Judicial para autorizar, de forma

experimental, la entrada de cámaras fotográficas y equipo audiovisual a algunos procedimientos judiciales. En ese entonces expresamos que nuestro norte era promover la transparencia y confianza del Pueblo en su sistema judicial. In re C. 15; Regl. Uso Cámaras Proc. Jud., 188 DPR 424, 425 (2013). En el día de hoy, luego de un riguroso proceso de análisis, y con el beneficio del informe *Evaluación sobre la efectividad audiovisual de difusión por los medios de comunicación en los procesos judiciales*, que preparó el Secretariado de la Conferencia Judicial y Notarial (Informe del Secretariado), tomamos otro paso más hacia la consecución de lo que un día fue una mera aspiración. Por eso voto conforme con la Resolución que hoy emite este Tribunal.

En particular, ahora ampliamos el Programa Experimental para el Uso de Cámaras Fotográficas y de Equipo Audiovisual de Difusión por los Medios de Comunicación en los Procesos Judiciales (PECAM) a una sala de asuntos de lo civil y a una sala de asuntos de lo criminal del Centro Judicial de San Juan, y lo extendemos de forma indefinida a las Salas de Recursos Extraordinarios del mismo Centro Judicial. También enmendamos la Regla 15 del Reglamento del PECAM con el propósito de establecer un mecanismo ordenado y uniforme para la tramitación de las solicitudes de cobertura electrónica en las salas judiciales donde no se ha extendido el PECAM. Ese procedimiento que hoy adoptamos salvaguarda y armoniza tanto los intereses de los medios de

comunicación como los de las partes en los procesos judiciales, y a la misma vez encausa los trabajos de la Rama Judicial de forma eficiente. Ante una solicitud de un medio de comunicación interesado en la cobertura electrónica de un proceso judicial en una sala a la que no se ha extendido el PECAM, las partes en el litigio tendrán que ser notificadas y dispondrán de un término para expresarse al respecto. De esa forma, contaremos con toda la información necesaria al momento de decidir si concedemos la solicitud y extendemos el PECAM a procesos judiciales adicionales.

Estoy convencido de que estos cambios redundarán en que fluya más información acerca de los procesos judiciales. No obstante, todavía queda mucho camino por recorrer para que podamos decir que verdaderamente hemos abierto "las puertas de la Rama Judicial para mantener informado al Pueblo de Puerto Rico sobre los procedimientos que se desarrollan en nuestros tribunales". ASPRO et al., Ex parte I, supra, pág. 776. Soy consciente de las preocupaciones legítimas que se han planteado en relación a la apertura de las puertas de nuestros tribunales a las cámaras, y en particular a lo concerniente a la entrada de las cámaras a los procedimientos criminales. Sin embargo, los hallazgos del Informe del Secretariado demuestran que en los procesos judiciales celebrados bajo el PECAM y en las demás coberturas electrónicas que autorizamos en estos pasados dos años, se mantuvo un balance entre los objetivos que se

esperaban lograr y las garantías que se aspiraban salvaguardar. Esos hallazgos están sustentados, en términos generales, por las experiencias de las personas que participaron en los procesos judiciales, incluyendo jueces, abogados, funcionarios del tribunal y medios de comunicación, según recogidas en el Informe del Secretariado.

No encuentro razón para pensar que en las salas adicionales a las que hoy extendemos el PECAM, incluyendo la sala de asuntos de lo criminal, la experiencia vaya a ser distinta. Como ya he expresado en varias ocasiones, "el uso de cámaras en los procedimientos penales está más que ensayado en otras jurisdicciones, por lo que no hay que temerle". Ex Parte: Asociación de Periodistas de Puerto Rico, Res. de 22 de abril de 2015, Martínez Torres, Voto particular de conformidad (citando ASPRO et al., Ex parte I, supra, pág. 776.) Aun así, en materia criminal, solamente extendemos el PECAM a juicios por tribunal de derecho, lecturas de fallo y vistas de lectura de sentencia. Reservamos para otro momento la ampliación del programa a juicios por jurado.

Además de esas limitaciones, hoy enmendamos el Reglamento del PECAM, conforme a gran parte de las recomendaciones contenidas en el Informe del Secretariado, para introducir salvaguardas adicionales que garanticen que la cobertura electrónica de los procesos judiciales no afecte la sana administración de la justicia. El Reglamento

del PECAM también le brinda a los jueces las herramientas necesarias para garantizar que la cobertura electrónica no afecte los derechos constitucionales de los acusados en los procedimientos criminales y de las partes y testigos en los demás procesos judiciales. Así, por ejemplo, los jueces que presiden los procedimientos cubiertos bajo el PECAM poseen la autoridad para denegar, limitar o restringir la cobertura electrónica de los procesos judiciales ante su consideración.

En fin, confío en que este proceso de estudio continúe progresando y muy pronto podamos expandir el PECAM a más salas y procedimientos judiciales, tanto civiles como criminales, alrededor de la Isla. Aunque mi deseo sería que nos moviéramos más rápido en esa dirección, voto conforme con estas enmiendas, como haré con cualquier otro paso hacia la meta de accesibilidad general a los procedimientos judiciales.


                        Rafael L. Martínez Torres
                        Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


In re:

Enmiendas al Reglamento del
Programa Experimental para el
Uso de Cámaras Fotográficas y          ER-2015-06
Equipo     Audiovisual     de
Difusión por los medios de
comunicación en los Procesos
Judiciales.


Voto particular de conformidad en parte y disidente en parte
emitido por el Juez Asociado Señor Rivera García, al que se
unieron la Jueza Asociada Señora Pabón Charneco y el Juez Asociado
Señor Feliberti Cintron.


En San Juan, Puerto Rico, a 16 de julio de 2015.

Estoy conforme con mantener indefinidamente el Programa Experimental para el Uso de Cámaras Fotográficas y Equipo Audiovisual de Difusión por los Medios de Comunicación en los Procesos Judiciales (PECAM), en las Salas de Recursos Extraordinarios del Centro Judicial de San Juan hasta que emitamos una orden en contrario. Asimismo, no tengo inconveniente en que se extienda el referido programa a los procesos judiciales celebrados en la Sala 901 de Asuntos de lo Civil del Centro Judicial de San Juan. Esto en la medida que los Jueces y Juezas que presidan las

correspondientes salas mantengan *amplia discreción* para autorizar, denegar o limitar cualquier transmisión de los procedimientos, incluyendo aquellas que este Tribunal autorice directamente mediante Resolución.[13] Entiendo que ambos proyectos son medidas adecuadas que nos permitirán continuar afinando aquellos detalles que propicien el más efectivo y ordenado desarrollo de los procedimientos en presencia de cámaras de televisión y otros medios de difusión.

Por otra parte, soy del criterio que en la medida que el programa continúe de manera experimental las transmisiones autorizadas se deben limitar a las expresamente incluidas en el Reglamento. Aun así, inicialmente no tengo objeción en que mantengamos las puertas abiertas para que en su momento evaluemos cualquier otra petición. En este particular, avalo la reglamentación adoptada que, entre otros asuntos, garantiza que las partes deberán ser notificadas de cualquier petición de transmisión que realicen los medios de comunicación y se les brinda un término oportuno para que consignen sus respectivas posiciones.[14]

Ahora bien, con lo que no estoy conforme y donde difiero drásticamente de la mayoría de mis compañeros y compañeras es en extender el PECAM a la Sala 1104 de

---

[13] Véase Regla 15 del Reglamento del Programa Experimental para el Uso de Cámaras Fotográficas y Equipo Audiovisual de Difusión por los Medios de Comunicación en los Procesos Judiciales, según enmendado por la Resolución que antecede.

[14] Íd.

Asuntos de lo Criminal del Centro Judicial de San Juan. Genuinamente, no puedo avalar una medida que podría conllevar un menoscabo directo al derecho constitucional de todo acusado a tener un juicio justo e imparcial enmarcado en las garantías propias del debido proceso de ley.[15] Nuestra función principal como Jueces y Juezas durante un juicio criminal es garantizar que todos los elementos y componentes del proceso se canalicen en función a esos derechos. Por lo tanto, todo otro interés debe ajustarse a esa realidad.

Lo anterior no equivale a una restricción al marco de acción de los periodistas en su vital labor de cubrir lo que acontece en nuestros tribunales. La prensa cuenta con todo el derecho a acceder a las salas civiles y penales e informar sobre lo que allí acontece. Más importante aún, nuestros ciudadanos y ciudadanas tienen derecho a conocer esa información. Es por ello que ese acceso ya está garantizado, *aun previo* a la implementación del PECAM. La prensa, salvo algunos procesos o instancias particulares de naturaleza confidencial, tiene *total* acceso a los procedimientos judiciales. Incluso, tiene áreas específicas reservadas para observar y reportar lo que allí acontece. Es así como se les ha garantizado su primordial derecho constitucional de libertad de prensa. Ahora, ese derecho **no**

---

[15] Ciertamente, no propongo la idea de que la mera presencia de una cámara de televisión constituya una violación al derecho de todo acusado en Puerto Rico de contar con un juicio justo e imparcial. En ese particular, tengo muy presente las expresiones del Tribunal Supremo de los Estados Unidos en el caso de Chandler v. Florida, 449 U.S. 560 (1981) y Nixon v. Warner Communications, Inc., 435 U.S. 589 (1978), por ejemplo.

incluye, bajo ninguna circunstancia, la utilización de cámaras de televisión mientras se ofrecen testimonios sobre hechos criminales, por ejemplo.[16] Eso es una *concesión* para cual simple y sencillamente no voy ofrecer mi voto afirmativo.

Al respecto, es importante tener presente que esto es un asunto que transciende el debate de transparencia de la Rama Judicial. Una oposición como la que, en efecto, consigno en este voto particular va mucho más allá de eso y se concentra en las implicaciones específicas y concretas de la autorización que hoy emite este Tribunal. Es por ello, que aunque soy consciente de que las cámaras no son en sí necesarias o claves para la transparencia, no tengo objeción en su uso en las salas civiles, pero sí en su utilización en las salas criminales. Lo lamentable de este asunto es que más allá de mi enérgica oposición a esta medida, la realidad es que la extensión del programa experimental tiene serias fallas en lo que será su implementación, lo cual agravan aún más mis preocupaciones. Es ahí, precisamente, donde quisiera concentrar unos breves comentarios.

## I

En primer lugar, es importante señalar que el PECAM es un programa experimental pensado y diseñado para procedimientos civiles y el cual una mayoría de este

---

[16] Así lo reconoció, incluso, el Tribunal Supremo de los Estados Unidos en Nixon v. Warner Communications, Inc., 435 U.S. 589 (1978) ("The same could be said of the testimony of a live witness, yet there is no constitutional right to have such testimony recorded and broadcast."). Véase, además, Estes v. State of Texas, 381 U.S. 532 (1965).

Tribunal opta por extender a procedimientos penales sin más. Ni siquiera se desarrolló un protocolo o reglamentación específica aplicable a las salas criminales. Todo lo contrario. Simplemente, se tomó el mismo reglamento que se desarrolló para experimentar en las salas de recursos extraordinarios y se hizo extensivo a las salas penales. Esto sin mayores consideraciones cuan si fueran procesos judiciales paralelos, con el único propósito de acceder a los reclamos de los medios de comunicación de obtener concesiones más allá de lo que les corresponde como derecho.

Este proceder erróneo y acelerado es preocupante por muchas razones.[17] *Primero*, porque equipara los procesos criminales a los procedimientos civiles, pasando por alto las marcadas diferencias entre ambos y sus serias implicaciones constitucionales y sociales. *Segundo*, porque desatiende cada una de las preocupaciones legítimas expresadas por *todos* los componentes de nuestro sistema de justicia, particularmente por aquellos Jueces y Juezas que laboran día a día en nuestras salas penales.[18] *Tercero*,

---

[17] Ciertamente, los reclamos de la prensa de Puerto Rico sobre su interés en cubrir los procesos judiciales no es un asunto novedoso y de reciente discusión. Por el contrario, es un asunto que ha estado planteado por mucho tiempo y ha sido objeto de múltiples informes y discusiones durante distintas Conferencias Judiciales. Véase, e.g., Secretariado de la Conferencia Judicial del Tribunal Supremo de Puerto Rico, Informe sobre la relación entre la prensa y los tribunales, Nov. 1981; Secretariado de la Conferencia Judicial del Tribunal Supremo de Puerto Rico, Uso de equipo de difusión por los medios de comunicación en los procesos judiciales, Informe y Reglamento, 1993. No obstante, no es hasta hace apenas dos años que, en efecto, se tomaron medidas de avance dirigidas a implementar un programa experimental que permitiera el uso de cámaras fotográficas y equipo audiovisual de difusión por los medios de comunicación en nuestros tribunales.

[18] Véase, Secretariado de la Conferencia Judicial y Notarial, Informe Evaluación sobre la efectividad del uso de cámaras fotográficas y de

porque ignora por completo una de las recomendaciones claves brindadas por el Secretariado de la Conferencia Judicial y Notarial (Secretariado) en su Informe "Evaluación sobre la efectividad audiovisual de difusión por los medios de comunicación en los procesos judiciales" (Informe), concerniente a la cobertura de los procedimientos criminales y la necesidad de que los testigos consientan a la grabación y transmisión de sus testimonios.[19]

No hay duda que todos los miembros de este Tribunal compartimos un profundo interés de que nuestros ciudadanos conozcan de primera mano lo que sucede en los tribunales. Indiscutiblemente, la Rama Judicial *podría* beneficiarse de que estos tengan un mayor acceso para observar los procesos judiciales sin la intervención de terceros. Esto en la medida que ello *podría* redundar en aumentar la confianza del Pueblo en su sistema de justicia. No obstante, la realidad es que el PECAM tal y como está diseñado al momento – o al menos como se ha implementado hasta el presente – lo menos que viabiliza es el acceso *directo* de

---

equipo audiovisual de difusión por los medios de comunicación en los procesos judiciales, 2014, págs. 160-163. *Así se añade un capítulo más a la marcada y preocupante desconexión que existe entre los miembros de este Tribunal y los Jueces y Juezas que laboran en nuestros foros de primera instancia.*

[19] Al respecto, el Secretariado nos recomendó en su Informe lo siguiente: "Que se solicite el consentimiento a las personas testigos y peritas para que se pueda fotografiar o grabar en video su testimonio en sala. En la alternativa, el Juez o la Jueza podría tomar medidas cautelares para permitir que se pueda grabar el testimonio con la imagen difundida o solo el audio". Íd., págs. 235-236.

nuestros ciudadanos a los procesos judiciales.[20] De hecho,
lo único que promueve este programa – más allá de los
objetivos que pretendamos promulgar para su justificación –
es un mayor acceso de los medios de comunicación a nuestras
salas judiciales. Esto, claro está, bajo la cándida idea de
que estos transmitirán íntegramente los procedimientos y

---

[20] Nótese que el único acceso que tiene la ciudadanía sobre los procesos
judiciales que hemos autorizado hasta el momento han sido aquellos que
la prensa ha optado por transmitir, conforme a sus intereses. Es decir,
tal y como está diseñado el PECAM, nuestros ciudadanos únicamente
pueden acceder a aquellos procesos judiciales que la prensa opta por
transmitir. Por lo tanto, esa transparencia y educación del pueblo ha
queda supeditada a los intereses muy particulares de la prensa del
País. ¿Cómo en ese escenario podemos plantear que el PECAM promueve el
que los ciudadanos tengan acceso *directo* a los procesos judiciales y,
como consecuencia, estén más orientados sobre lo que sucede en nuestros
tribunales? Incuestionablemente, hay un desfase entre los objetivos que
pretendemos alcanzar y el medio adoptado para conseguirlo. Sobre este
particular, el Informe preparado por el Secretariado nos brinda
importantes puntos a considerar:

> Respecto a la cobertura de los procedimientos judiciales, en
> específico, la prensa ha sido duramente criticada debido a la
> interpretación errónea de asuntos y procedimientos judiciales.
> Se les atribuye sacar de contexto la información para hacer
> noticia y en ocasiones se les inculpa de avivar las masas a
> favor o en contra de una parte en un caso o de enfocar el
> interés público hacia un suceso o persona. No hay manera de
> prohibir o evitar rotundamente que eso ocurra,
> independientemente de que el medio sea prensa escrita o por
> coberturas electrónicas. En vista de ello, *si la Rama Judicial
> provee un mecanismo que permita que la ciudadanía pueda
> observar y escuchar de primera mano el proceso judicial, éste
> ni el comportamiento de sus actores estaría sujeto a la
> interpretación y transmisión de un intermediario*. Desde el
> estrado, el juez o la jueza sería capaz de explicar de la
> mejor forma posible y en lenguaje coloquial o menos técnico la
> justificación o base de su determinación. Más aún, podría ser
> de utilidad para educar a nuestra ciudadanía sobre la realidad
> de los procesos judiciales, la cual es muy distinta a los
> programas televisivos que simulan litigios y otros procesos
> relacionados. *En la medida que la ciudadanía tiene acceso
> directo y no a través de los medios de comunicación, los
> medios de comunicación están obligados a ser más responsables
> con lo que se divulga* para así evitar que la audiencia los
> critique. Tal entendimiento del proceso judicial promueve el
> acceso a la justicia en la medida que los ciudadanos y las
> ciudadanas se familiaricen con los procesos judiciales y
> puedan sentirse confiados – sin miedo alguno – de reclamar sus
> derechos o defenderse de reclamaciones o acusaciones en su
> contra.

(Énfasis suplido). Secretariado de la Conferencia Judicial y Notarial,
*Informe Evaluación sobre la efectividad del uso de cámaras fotográficas
y de equipo audiovisual de difusión por los medios de comunicación en
los procesos judiciales*, 2014, pág. 238.

así el ciudadano podrá conocer de "primera mano" lo que sucede en nuestros tribunales.

Esto en un sentido práctico equivale a que la Rama Judicial ha delegado indirectamente tan importantes objetivos de transparencia, educación y confianza, a medios de comunicación de estricto carácter comercial cuyo legítimo interés de negocio es la venta de tiempo y espacio, independientemente de cuanto ello beneficie o afecte a nuestro sistema de justicia. Esto es una realidad que si bien pude haber estado dispuesto a *inicialmente* obviar para propósitos de un programa experimental en cuanto a los procesos judiciales de índole civil, ciertamente no estoy dispuesto a pasar por alto cuando se trata de procesos judiciales de carácter criminal. Máxime cuando al día de hoy no contamos ni tan siquiera con unos delineamientos claros sobre la efectividad y conveniencia de las transmisiones de los procesos civiles, razón por la cual nos vemos en la necesidad de extender el programa experimental por un tiempo adicional. ¿Cómo en ese panorama vamos a movernos a experimentar en una sala criminal en una etapa tan crítica como lo es un juicio en su fondo, independientemente sea por tribunal de derecho?

Sobre ello, debemos tener claro que en un juicio en su fondo, particularmente en el contexto criminal, el Juez o la Jueza no tan solo tiene la responsabilidad de presidir los procedimientos, sino de asegurar que los mismos se desarrollen en un ambiente de orden y solemnidad que

propicie la más efectiva búsqueda de la verdad. Todo ello enmarcado en la garantía plena de aquellos derechos constitucionales y estatutarios que cobijan a toda persona acusada de delito en nuestro ordenamiento jurídico. En ese contexto, la extensión del programa experimental que este Tribunal proponga debe tener presente el efecto que ello tendría no tan solo sobre el acusado directamente, sino sobre todos los demás componentes típicos del proceso penal.

Tomemos, por ejemplo, los testigos. Normalmente, las personas muestran una gran resistencia a participar como testigos en juicios criminales, principalmente porque temen por su seguridad personal. ¿Cuántas noticias no hemos escuchado sobre testigos asesinados, incluso en nuestras instalaciones judiciales? Ciertamente, se trata de situaciones que han ocurrido sin que las cámaras televisivas estén presentes, pero dudo mucho que alguien seriamente plantee que hace falta un mayor estudio o experimentación para asegurar que ese temor se agudizará enormemente si la persona conoce que deberá ofrecer su *testimonio sobre hechos criminales* frente a las cámaras de televisión con miles de personas como espectadores. Ello, indudablemente, comprometerá la integridad de sus testimonios, lo cual tendrá serias repercusiones en el proceso justo al cual el acusado tiene derecho y afectará cualquier avance de colaboración de parte de la ciudadanía

en nuestra función principal de administración de la justicia.[21]

Sobre este particular, el Informe del Secretariado específicamente recopila la experiencia de los testigos que participaron de los procedimientos judiciales cubiertos electrónicamente. Según surge de este documento, hubo testigos que expresamente plantearon que "la cobertura electrónica fue intimidante" y que "de tener que testificar en un caso sobre asuntos personales, la presencia de los medios *pudiera influenciar su testimonio*".[22] Independientemente, de cuántos testigos se sintieron de esa manera, el simple planteamiento debe ser objeto de profunda consideración. La manera más sencilla de comprender este punto es ubicarnos en la posición de un testigo de un hecho criminal.

Pensemos, por ejemplo, en un convicto con un extenso historial criminal, ¿hubiésemos estado dispuestos a testificar en su contra con una cámara de televisión de frente transmitiendo en vivo cada una de nuestras palabras y exponiendo nuestra imagen? No hay duda alguna de que ese hecho, por la razón que sea, nos haría reconsiderar nuestro testimonio o, incluso, nuestra participación como testigo del Ministerio Público. ¿Cuán aislados tenemos que estar de la dinámica del día a día en nuestros tribunales de primera instancia para no comprender algo tan básico? Los procesos

---

[21] A modo ilustrativo, véase, íd., págs. 115-117.

[22] (Énfasis suplido). Íd., pág. 116.

judiciales penales no pueden estar sujetos a esa incertidumbre. Por el contrario, nuestro deber es asegurar que todos los componentes del procedimiento se sientan en la libertad de compartir íntegramente su versión de los hechos, en función de la búsqueda de la verdad y la administración de la justicia. Esto es un principio que la simple adopción de "mecanismos adicionales" no va a resolver.

Como Jueces del Tribunal Supremo de Puerto Rico debemos ser conscientes de que la realidad de nuestros tribunales de primera instancia es muy distinta a la que experimentamos en nuestras cómodas instalaciones. Teóricamente, todo es posible, pero la práctica puede representar una realidad muy distinta. *Por ello, es primordial que escuchemos y tomemos en cuenta para efectos de evaluación la opinión de aquellos jueces y juezas que día a día presiden nuestras salas criminales en los foros primarios*. Es ahí, precisamente, donde radica una de las fallas principales de la medida que hoy adopta este Tribunal de extender un programa experimental en una sala penal tan pronto como el próximo mes de septiembre. Del Informe preparado por el Secretariado en relación al PECAM, surge que los Jueces y Juezas de Asuntos de lo Criminal expresaron una fundamentada y "marcada oposición" a la extensión de este programa experimental a las salas penales.[23]

---

[23] Íd., pág. 236.

De hecho, los Jueces y Juezas que participaron de los grupos focales dirigidos por el Secretariado no identificaron aspecto positivo o favorable alguno sobre el uso de las cámaras fotográficas y de equipo audiovisual durante los procedimientos judiciales de índole penal.[24] Sobre este particular, el Informe refleja, en parte, lo siguiente:

> En términos generales, los jueces y juezas que atienden Salas de Asuntos de lo Criminal no señalaron razones para estar a favor de la cobertura electrónica de procedimientos judiciales. Sin embargo, identificaron varias razones para estar en contra de este tipo de cobertura.
>
> Entre las razones identificadas para estar en contra se destaca la preocupación sobre su seguridad personal, la del personal del alguacilazgo, la de fiscales, la de personas testigos y la del Jurado. *Todas las personas coincidieron en que aumentaría el peligro a su seguridad y comprometerían los procedimientos judiciales.* Otra de las razones identificadas para estar en contra son las parodias y burlas que se propician. De forma igual, se entendió que aumenta el desconocimiento y la desinformación de la ciudadanía. Se mencionó también el uso indebido de la información por parte de los medios de comunicación.
>
> *De igual forma se destacó que las personas testigos se cohíben ante la exposición mediática, lo que compromete la confidencialidad de su testimonio y entorpece el esclarecimiento de los casos.* Se mencionó como un aspecto negativo, la exposición de agentes encubiertos, la distracción que causa la cobertura electrónica en el desarrollo de los procesos judiciales y el efecto sobre la sana administración de la justicia. Del mismo modo, se recalcó que la cobertura electrónica afecta el orden y la solemnidad de los tribunales. Se mencionó que los medios de comunicación están interesados en cubrir aspectos dramáticos y

---

[24] Íd., pág. 161.

morbosos de los asuntos y que, al hacer esto, crean un espectáculo. Ante ese interés, coincidieron en que no se logra la transparencia de los procedimientos.[25]

En sintonía con estas expresiones, los jueces que presidieron las vistas de lectura de sentencia que una mayoría de este Tribunal autorizó, destacaron preocupación ante una posible expansión del programa a procesos penales "ante la posibilidad de que *se intimiden, amedrenten o se influencien las personas testigos por la exposición en los medios*".[26] Cónsono con ello, el Informe refleja que "[e]n cuanto a las vistas preliminares, las vistas de supresión de evidencia o confesión, *los juicios por tribunal de derecho* y los juicios por jurado, [estos] no favorecieron la cobertura electrónica debido a la presentación de prueba testifical".[27] Más aún, los Jueces y Juezas del Tribunal de Apelaciones que participaron en el grupo focal expresaron "que la cobertura electrónica, dependiendo del asunto, tendrá efectos perjudiciales".[28] A modo de ejemplo, manifestaron preocupación "*sobre el efecto adverso que tendría en la presentación de prueba testifical en casos criminales* y sobre la posibilidad de someter a las personas afectadas a una doble victimización, tanto por el proceso judicial como por los medios de comunicación".[29]

---

[25] (Énfasis suplido). Íd.

[26] (Énfasis suplido). Íd., pág. 48.

[27] (Énfasis suplido). Íd.

[28] Íd., pág. 163.

[29] (Énfasis suplido). Íd., págs. 163-164.

Ante tales resultados, y a base de mi experiencia como Juez del Tribunal de Primera Instancia en una sala criminal por más de diez años, no puedo avalar la extensión de un programa de transmisión a una sala criminal aunque sea de manera temporera y experimental. Ciertamente, por algún lado hay que comenzar y tal parecería que un programa experimental sería el inicio idóneo que nos permitiría conocer las ventajas y desventajas del proceso. No obstante, entiendo que, como mínimo, esta etapa de experimentación no debe producirse en el vacío, sino que debió ir _precedida_ por la adopción de medidas adicionales que atiendan directamente las preocupaciones expresadas por los Jueces y las Juezas de las salas criminales y que verdaderamente adelantaran nuestro objetivo de educar a la ciudadanía sobre los procesos judiciales.

En ese sentido, _y aunque no comparto la idea de extender el PECAM a una sala criminal_, soy del criterio que como paso _previo_ la Rama Judicial debió, _al menos_, elaborar e implementar un programa mediante el cual se desarrollen módulos educativos dirigidos a orientar a la población general y a la prensa sobre los procesos judiciales en el ámbito penal. Para ello bien se pudo entablar un acuerdo colaborativo con alguna de las Escuelas de Comunicaciones de Puerto Rico y contar con la contribución _ad honorem_ de Jueces y Juezas, fiscales del Departamento de Justicia y abogados y abogadas de la práctica privada. Esto, cónsono

con lo recomendado por el Secretariado de la Conferencia Judicial y Notarial en su Informe.[30]

Como Jueces, no debemos olvidar que nuestra función constitucional principal es administrar justicia. Ello, no debe quedar supeditado a los intereses de ningún grupo en particular y mucho menos a la opinión pública. Más aún, cuando actualmente grupos como la prensa del País cuentan con el acceso constitucionalmente necesario a nuestros procedimientos penales. Por lo tanto, si una mayoría de este Tribunal interesa conceder mayor acceso, este debió ir precedido de todas las garantías necesarias dirigidas a mantener la integridad de nuestros juicios criminales y, a su vez, fomentar una verdadera educación de nuestros ciudadanos.

Mientras no se desarrolle e implemente ese componente educativo, las transmisiones no serán más que una pieza de entretenimiento cuan programa de "reality show" que no abonará a tan importante interés de fomentar la confianza del Pueblo de Puerto Rico en nuestro sistema de justicia. Por el contrario, la integridad de la Rama Judicial quedará – como, en efecto, queda en este momento - a la merced del *escrutinio desinformado* que al final del día podría

---

[30] Íd., págs. 236-237. La Resolución que hoy certificamos sí incluye una instrucción dirigida a la Oficina para la Administración de los Tribunales para que "presente un plan para institucionalizar la transmisión de procesos judiciales con propósitos educativos en o antes del 30 de septiembre de 2015". Véase, pág. 2 de la Resolución que antecede. Ahora bien, más allá del vago lenguaje que se emplea y la falta de especificidad sobre el contenido de ese programa educativo, la realidad es que este debió adoptarse como paso *previo* a la extensión del PECAM, no como un asunto a considerar posterior a su implementación.

redundar en un mayor grado de desconfianza en nuestro sistema de tribunales y sus componentes.


                                        Edgardo Rivera García
                                           Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

Enmiendas al Reglamento del
Programa Experimental para el                ER-2015-06
Uso de Cámaras Fotográficas y
Equipo Audiovisual de Difusión
por los Medios de Comunicación

Voto particular emitido por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 15 de julio de 2015.

> "*Televisar los procesos cumple con una función educativa y sirve de desinfectante. Y no sólo eso,... el ciudadano puede fiscalizar, si hay un proceso televisado, el pueblo lo puede ver directamente y puede juzgar si el periodista reportó bien lo que vio, porque ahora no es que 'me dijeron', ahora es que yo también lo estoy viendo. La fiscalización no es sólo para la Rama Judicial, sino también es para el cuarto poder. Eso hace que la cobertura sea más objetiva*".[31]
>
> Hon. José J. Ramírez Lluch

Sin duda, la Resolución que hoy emite este Tribunal amplía el curso de acción de avanzada

---

[31]*Véase* IPP, Luces, cámara... acción: Una nueva mirada a la prensa judicial, en http://www.suagm.edu/ipp/Seguridad/Entradas/2014/7/29 _Luces,_camara..._accion__Una_nueva_mirada_a_la_prens a_judicial.html (última visita en 13 de junio de 2015).

que comenzó a forjarse hace más de dos años con la aprobación del nuevo Canon 15 de Ética Judicial, 4 LPRA Ap. IV-B, C. 15. Aunque ciertamente falta mucho camino por recorrer, con las medidas que hoy se implementan nos movemos un paso adelante en el esfuerzo por lograr que nuestra ciudadanía tenga un mayor acceso a los procesos que acontecen en los foros judiciales y de proteger los derechos que amparan a la prensa. Ya en el pasado he expresado que esas garantías no deben obstruirse ni tomarse livianamente, pues son fundamentales para una sociedad democrática como la nuestra.

Por entender que este Tribunal debe unirse a la tendencia de salvaguardar las aludidas garantías al fomentar un Poder Judicial más accesible y transparente, y con el fin de que eventualmente las medidas tomadas conviertan la política institucional de transmitir los procedimientos judiciales en *la norma y no la excepción*, imparto mi conformidad a la Resolución que nos ocupa.

## I

Sabido es que en el 2013, este Tribunal emprendió un curso de acción histórico y de avanzada al aprobar por unanimidad un nuevo Canon 15 de Ética Judicial, 4 LPRA Ap. IV-B, C. 15. La aprobación de este canon se hizo expresamente con el propósito de atemperarlo a los adelantos tecnológicos modernos y, más importante aún, asegurar el acceso de la ciudadanía a la información pública y resguardar los derechos que cobijan a la prensa. En esencia, la promulgación del nuevo Canon 15 está

fundada en el objetivo primordial de **"acercar cada vez más nuestro sistema de justicia a los más altos valores y niveles de transparencia, de fomentar la confianza del pueblo en su Judicatura y de garantizar el acceso de la ciudadanía a esta"**. *In re* C. 15; Regl. Uso Cámaras Proc. Jud., 188 DPR 424, 425 (2013). (Énfasis suplido).

En armonía con ese objetivo, el Canon 15 permite la toma de fotografías o video durante la celebración de sesiones judiciales, y radiodifundir o televisar este tipo de procedimientos. Íd., pág. 426. De igual forma, autoriza el uso de dispositivos electrónicos para recopilar y transmitir la información de lo que se ventila en los procesos judiciales. Íd. Conscientes del cambio adoptado, dejamos claro que las medidas tomadas garantizarían el acceso del público a los procedimientos judiciales sin infringir el derecho a un juicio justo e imparcial, sin interrumpir el proceso judicial y sin menoscabar la sana administración de la justicia. Íd.

Es conocido que como resultado de la enmienda al mencionado canon, se promovió la implementación de un exitoso programa experimental que avala el uso de cámaras fotográficas y equipo audiovisual en las salas del Centro Judicial de San Juan donde se dirimen los recursos extraordinarios.[32] Para asegurar y regular el acceso de la

---

[32]Esta iniciativa es conocida como *Programa experimental para el uso de cámaras fotográficas y de equipo audiovisual de difusión por los medios de comunicación en los procesos judiciales celebrados en las Salas de Recursos Extraordinarios del Centro Judicial de*

prensa a las aludidas salas, se promulgó el *Reglamento del programa experimental para el uso de cámaras fotográficas y de equipo audiovisual de difusión por los medios de comunicación en los procesos judiciales* (Reglamento). Íd., págs. 428-442. En síntesis, éste incluye los pormenores que deben observarse en aras de permitir o denegar la cobertura mediática de los procesos judiciales.

No obstante, si bien el citado Reglamento dispone la manera en que debe operar el programa experimental, desde la aprobación del nuevo Canon 15 se han establecido precedentes históricos al permitir la cobertura de vistas orales celebradas ante este Tribunal, así como transmisiones de varias instancias de procedimientos judiciales de naturaleza penal.[33] A pesar de que estos procedimientos judiciales quedan fuera del alance del PECAM, considero que al permitir su cobertura le hemos otorgado fiel cumplimiento al reseñado propósito cardinal que nos llevó a aprobar el nuevo Canon 15. Resulta oportuno puntualizar que en las ocasiones en que permitimos el acceso de la prensa a procedimientos

---

*San Juan* (PECAM). En adelante, cuando aluda al programa experimental, me referiré a éste como PECAM.

[33]Para otorgarle acceso pleno a la prensa y maximizar el derecho de la ciudadanía a la información pública, nos hemos amparado en el propio Canon 15, el cual dispone, en lo pertinente, que:

> Se podrá tomar fotografías o video en el salón del tribunal durante la celebración de sesiones judiciales o recesos y radiodifundir o televisar los procedimientos judiciales, **solamente según lo autorice el Tribunal Supremo mediante una orden, regla o norma.** *Véase* 4 LPRA Ap. IV-B, C. 15. (Énfasis suplido).

judiciales fuera de lo cobijado en el PECAM, siempre hice hincapié en que debíamos movernos a considerar la necesidad de *uniformar* y *ampliar* las normas que se iniciaron con la implantación del programa experimental.

## II

Precisamente, al aprobar el Canon 15 establecimos que transcurrido un año de la entrada en vigor del PECAM, se debía realizar una evaluación exhaustiva para medir la efectividad del uso de cámaras fotográficas y de equipo audiovisual de difusión en los procesos judiciales. Esta evaluación –delegada al Secretariado de la Conferencia Judicial y Notarial (Secretariado)- tenía que garantizar la participación de todos los sectores interesados, entiéndase la Judicatura, los abogados y abogadas, el Ministerio Público y los medios de comunicación. En cumplimiento con esa encomienda, el Secretariado remitió a la consideración de este Tribunal un informe intitulado *Evaluación sobre la efectividad del uso de cámaras fotográficas y de equipo audiovisual de difusión por los medios de comunicación en los procesos judiciales*. En esencia, la evaluación auscultó la experiencia de quienes participaron en procedimientos judiciales bajo el PECAM y en los procesos en los cuales este Tribunal autorizó su cobertura de manera extraordinaria. Además, el informe emitido por el Secretariado incluye un examen de la opinión general de los sectores evaluados con respecto al acceso de la prensa a los procesos judiciales.

En síntesis, los hallazgos plasmados en el informe permiten concluir que tanto en los procesos judiciales celebrados bajo el PECAM como en las coberturas electrónicas autorizadas por este Tribunal, se mantuvo un balance adecuado entre los objetivos que se perfilaron conseguir y las garantías que se deseaban proteger. *Véase* Informe: Evaluación sobre la efectividad del uso de cámaras fotográficas y de equipo audiovisual de difusión por los medios de comunicación en los procesos judiciales, Secretariado de la Conferencia Judicial y Notarial, pág. 231. De acuerdo con los resultados obtenidos, los sectores evaluados coinciden en que la cobertura electrónica promovió un mayor grado de acceso a la ciudadanía a los procesos judiciales. Íd. Del mismo modo, la información recopilada demuestra un marcado consenso entre los sectores en cuanto a que se promovió un mayor nivel de transparencia del sistema de justicia. Íd. Ello, pues, el uso de cámaras fotográficas y de equipo audiovisual de difusión fomentó el intercambio directo de información con la ciudadanía. Íd. Además, los resultados del informe indican que el logro de los objetivos propuestos no tuvo el efecto de vulnerar el derecho a un juicio justo e imparcial, de interrumpir el proceso judicial ni de afectar la sana administración de la justicia. Íd.

Por su parte, los hallazgos obtenidos ilustran que la mayor resistencia a extender el PECAM proviene del sector de la Judicatura. Íd., pág. 239. No obstante, es pertinente destacar que los jueces y juezas que

participaron de la experiencia de tener cámaras fotográficas y equipo audiovisual en sus salas no comparten tal opinión. Íd. Al contrario, los resultados demuestran que estos jueces y juezas favorecen la expansión del PECAM. Íd.

En consideración de los hallazgos recopilados y en pronóstico de cómo debe ser el alcance futuro del PECAM, el Secretariado presentó ante la consideración de este Tribunal varias alternativas de cursos de acción, las cuales recogen parte de mi visión en torno a este asunto. Esencialmente, éstas se resumen de la forma siguiente: (1) mantener el PECAM y enmendar varias disposiciones reglamentarias; (2) extender el PECAM a las vistas orales ante este Tribunal y el Tribunal de Apelaciones; (3) ampliar el PECAM a una sala de asuntos de lo civil; (4) extender el PECAM a una sala de asuntos de lo criminal; (5) adoptar un programa institucional que permita la transmisión de procesos judiciales; y (6) utilizar las grabaciones de los procedimientos judiciales como material educativo. Como puede apreciarse, las propuestas del Secretariado no son excluyentes entre sí, sino que promueven mayores procedimientos experimentales; crean una norma general de transmisión de las vistas orales apelativas y fomentan la adopción de programas educativos en los que se transmitan y analicen los procesos judiciales. Íd., págs. 232-238.

**A.**

Con el beneficio del informe emitido por el Secretariado, y en virtud de lo dispuesto en el Canon 15, este Tribunal emite una Resolución mediante la cual se acogen parcialmente las recomendaciones reseñadas. En lo pertinente, se enmienda el Reglamento para extender el PECAM de forma definitiva en las Salas de Recursos Extraordinarios del Centro Judicial de San Juan. Con el firme objetivo de que la ciudadanía tenga un mayor acceso a su sistema de justicia y de fomentar la transparencia de los procesos judiciales, este Tribunal amplía el PECAM a asuntos tanto de lo civil como de lo criminal.[34] Asimismo, se deja consignado que cualquier otra extensión del PECAM a salas adicionales se hará mediante dictamen de este Tribunal, sin necesidad de enmendar el Reglamento.[35] Por último, se instruye a la Directora Administrativa de la Oficina de Administración de los Tribunales que presente un plan para institucionalizar la transmisión de procesos judiciales con propósitos educativos en o antes del 30 de septiembre de 2015.

**III**

---

[34]Los asuntos en materia civil en los que se permitirá el acceso, incluyen, y no se limitan, a vistas de estado de procedimientos, vistas argumentativas, conferencias con antelación al juicio y vistas en su fondo en determinados casos. Por su parte, en cuanto a los asuntos de naturaleza criminal, el acceso comprende la celebración de juicios por tribunal de derecho, lecturas de fallo y vistas de lectura de sentencia.

[35]La recomendación de extender el PECAM a las vistas orales celebradas ante este Tribunal y el Tribunal de Apelaciones no fue implementada de inmediato por este Tribunal.

Luego de examinar el informe presentado por el Secretariado, conjuntamente con la Resolución que hoy emite este Tribunal, expreso que, en esencia, no tengo reparos con avalar el curso de acción propuesto, sin pasar por alto que mis expectativas eran mayores. Indudablemente, ello es cónsono con el firme criterio que he consignado en mis diversos votos con relación al acceso de la ciudadanía y de la prensa a lo que se dirime en nuestros tribunales.[36] Tal y como he indicado, este Tribunal no debe detener los esfuerzos encaminados a alcanzar la *plenitud* de acceso a los procesos judiciales dentro de nuestro esquema constitucional.

Hoy, este Tribunal decide acoger algunas de las recomendaciones emitidas por el Secretariado y, por consiguiente, amplía lo establecido en el 2013 con la aprobación del Canon 15. De esta forma, nos acercamos a la tendencia incuestionable en sociedades democráticas de salvaguardar y fortalecer tres aspectos fundamentales, a

---

[36] *Véanse* Voto particular disidente del Juez Asociado señor Estrella Martínez emitido en *Ex Parte*: Asociación de Periodistas de Puerto Rico, 2015 TSPR 45, 192 DPR ___ (2015); Voto particular de conformidad del Juez Asociado señor Estrella Martínez emitido en *Ex Parte*: Asociación de Periodistas de Puerto Rico, 2015 TSPR 20, 192 DPR ___ (2015); Voto particular de conformidad del Juez Asociado señor Estrella Martínez emitido en ASPRO *et al.*, *Ex parte* I, 2014 TSPR 102, 191 DPR ___ (2014); Voto particular de conformidad del Juez Asociado señor Estrella Martínez emitido en Solicitud ASPRO *et al.*, Ex parte II, 190 DPR 184 (2014); Voto particular disidente del Juez Asociado señor Estrella Martínez emitido en ASPRO *et al.*, *Ex parte* I, 190 DPR 82 (2014); Voto particular de conformidad del Juez Asociado señor Estrella Martínez emitido en ASPRO *et al.*, *Ex parte* I, 189 DPR 769 (2013); Voto particular de conformidad del Juez Asociado señor Estrella Martínez emitido en *In re*: C. 15; Regl. Uso Cámaras Proc. Jud., 188 DPR 424 (2013).

saber: (1) el acceso pleno de la prensa, con sus herramientas de trabajo, a los procedimientos que se ventilan en los tribunales, (2) el derecho de la ciudadanía a la información pública; y (3) la apertura de los foros judiciales al escrutinio público.

Con las medidas que se implementan, procedemos en armonía con nuestra función indelegable de promover y asegurar la transparencia del sistema judicial. Sabido es que uno de los ejes cardinales del Poder Judicial en un sistema democrático es la confianza pública en su funcionamiento y desempeño. En ese sentido, facilitar la información de cómo funciona y se desempeña el Poder Judicial contribuye de manera directa a fomentar la confianza de la ciudadanía en esta rama de gobierno. Recordemos que según surge de la parte expositiva de la Ley de la Judicatura del Estado Libre Asociado de 2003, "[e]s responsabilidad de todos propiciar un sistema de justicia en el que se provea acceso inmediato y económico para atender los reclamos de la ciudadanía, que sea sensible a la realidad particular de los distintos componentes de nuestra sociedad, **y que informe a la ciudadanía sobre sus derechos y responsabilidades, así como de todos los aspectos del proceso judicial**". *Véase* Exposición de Motivos de la Ley Núm. 201-2003 (2003 (Parte I) Leyes de Puerto Rico 972) (Énfasis suplido). Con ello en mente, resulta imperativo recalcar que las medidas que hoy se ponen en funcionamiento deben formar parte del

objetivo de establecer *la plenitud del acceso como una norma general y no la excepción.*

### A.

La aprobación de las presentes medidas exige enfatizar nuevamente que cualquier curso de acción encaminado a brindar el acceso de la prensa a los tribunales debe estar enmarcado dentro de los límites de unas garantías. Es decir, se deben ponderar las implicaciones constitucionales involucradas y, de esta forma, asegurar un balance adecuado entre el derecho a obtener un juicio justo e imparcial[37] y el derecho a la libertad de prensa.[38] Pueblo v. Hernández Mercado, 126 DPR 427, 436 (1990) ("[C]orresponde a la Rama Judicial hacer el delicado balance de interés entre la libertad de la prensa y los derechos de los acusados"). En otras palabras, así como tenemos el deber de proteger el derecho a un juicio justo e imparcial y garantizar el debido proceso de ley, también nos corresponde velar por el mandato constitucional que resguarda la libertad de prensa, con todo lo que ello implica.

Por otra parte, se ha planteado que la transmisión de los procesos judiciales tendría un efecto intimidatorio en algunos de los involucrados en las controversias que allí se dirimen. Respecto a este asunto, cabe señalar que

---

[37]Emda. VI, Const. EE. UU., LPRA, Tomo 1; Art. II, Sec. 11, Const. ELA, LPRA, Tomo 1.

[38]Emda. I, Const. EE. UU., LPRA, Tomo 1; Art. II, Sec. 4, Const. ELA, LPRA, Tomo 1.

actualmente nuestro ordenamiento cuenta con mecanismos efectivos para salvaguardar los intereses y los derechos de aquellos que participan en estos procesos. Se trata de medidas para que la transmisión directa no interfiera con el desenvolvimiento de los procedimientos judiciales, ni le reste la debida dignidad a éstos. Además, podemos beneficiarnos de mecanismos adicionales que han sido efectivos en otras jurisdicciones.

En ese sentido, podemos resaltar la prohibición de transmisión y toma de fotografías de lo siguiente: (1) víctimas de delitos sexuales, a menos que consientan; (2) los casos de familia; (3) miembros del Jurado; (4) menores de edad; (5) agentes encubiertos o informantes; y (6) procesos de menores; entre otras.[39] *Véase* Informe sobre el uso de cámaras fotográficas y equipo audiovisual de difusión para cubrir los procedimientos judiciales en Puerto Rico, Secretariado de la Conferencia Judicial y Notarial, Anejo E; *véase*, además, NCSC, Cameras in the Court: A State-by-State Guide, en

---

[39]Con el fin de proteger a los participantes en un proceso judicial, en algunas jurisdicciones se prohíbe lo siguiente: (1) las tomas cercanas al rostro (*close-ups*); (2) el acceso a los procedimientos celebrados en cámara; (3) la cobertura de las conversaciones entre abogado-cliente y las conferencias entre abogados; (4) los cambios en la toma de la cámara o en la posición de ésta sin autorización; y (5) la modificación o el uso adicional de luces a lo permitido; entre otras. Además, se restringe la cantidad de cámaras que pueden entrar a la sala donde se lleva a cabo el proceso judicial. *Véase* NCSC*,* Report on Fair Trial of High Profile Cases, en http://www.actl.com/AM/Template.cfm?Section=Advanced_Searc h&section=1998&template=/CM/ContentDisplay.cfm&ContentFile ID=73 (última visita en 22 de junio de 2015).

http://rtdna.org/article/cameras_in_the_court_a_state_by_s

tate_guide_updated (última visita en 19 de junio de 2015).

A tono con lo anterior, es menester hacer hincapié en que la Regla 8 del aludido Reglamento dispone que en nuestra jurisdicción está prohibida la cobertura de la prensa en todo procedimiento de naturaleza confidencial, según establecido por ley o al amparo de una orden judicial. *In re* C. 15; Regl. Uso Cámaras Proc. Jud., *supra*, pág. 434. Asimismo, la regla establece expresamente que el juez que preside los procedimientos cuenta con amplia discreción para prohibir, concluir o limitar la cobertura de un procedimiento judicial, de porciones de éste o del testimonio de alguno de los involucrados en el proceso. Íd.[40] A tales efectos, tomará su determinación considerando el interés de la justicia en proteger los derechos de las partes y de las personas testigos, y para preservar el orden y la buena conducta que debe imperar en el proceso judicial. Íd. Ciertamente, lo plasmado en la Regla 8 lleva a concluir que en nuestra jurisdicción contamos con garantías que disipan las preocupaciones y cuestionamientos de aquellos que se oponen a que la prensa tenga acceso a transmitir íntegramente los procesos judiciales, bajo el argumento de que se intimidaran los

---

[40]La cobertura del proceso judicial también puede ser prohibida, concluida, o limitada a instancia de parte. *In re* C. 15; Regl. Uso Cámaras Proc. Jud., 188 DPR 424, 434 (2013).

testigos u otros involucrados en el proceso o se menoscabarán sus derechos.[41]

## IV

En fin, aunque falta mucho por recorrer, con la determinación que hoy tomamos nos acercamos más a aquellos pilares que deben caracterizar las sociedades democráticas: libertad de prensa, acceso de la ciudadanía a la información pública y transparencia del Poder Judicial. Espero que el peldaño que hoy alcanzamos no sea para relegar los esfuerzos consumados al inmovilismo; que sea, más bien, para seguir adelantando el curso de acción de avanzada que emprendimos hace más de dos años.

Por todo lo expuesto, voto de conformidad a las acciones adicionales adoptadas en el día de hoy.

Luis F. Estrella Martínez
Juez Asociado

---

[41] En cuanto a este asunto, debe recordarse que nuestro ordenamiento cuenta con salvaguardas adicionales para proteger las víctimas o testigos. Esto, ya que en determinadas circunstancias la víctima de delito contra la indemnidad sexual o la víctima o testigo menor de edad (incluida toda persona mayor de 18 años con incapacidad mental determinada judicialmente, establecida mediante prueba pericial o por estipulación de las partes), puede testificar fuera de la sala judicial mediante la utilización del sistema televisivo de circuito cerrado. *Véase* 34 LPRA Ap. II, R. 131.1; *véase*, además, Ley Núm. 22 de 22 de abril de 1988, según enmendada, conocida como Ley para la Protección de Testigos y Víctimas, 25 LPRA sec. 973a-1.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Enmiendas al Reglamento del
Programa Experimental para el
Uso de Cámaras Fotográficas y
Equipo Audiovisual de Difusión          ER-2015-06
por los Medios de Comunicación
en los Procesos Judiciales

Voto Particular de Conformidad emitido por la Jueza Asociada
ORONOZ RODRÍGUEZ, al cual se une el Juez Asociado señor Martínez
Torres

En San Juan, Puerto Rico, a 15 de julio de 2015.

Las nuevas generaciones crecen con una gran
inquietud por conocer más sobre lo que pasa en
todos los ámbitos sociales, incluyendo su
Gobierno. Quieren información rápida, accesible,
sin intermediarios y quieren formar parte de sus
procesos. La Rama Judicial y el sistema de
justicia no pueden estar ajenos a este reclamo de
transparencia y participación. No son reclamos
meramente válidos, sino *necesarios* para una
democracia robusta. Estos trascienden geografías y
en el caso del Puerto Rico de hoy, son
ineludibles. Es la promesa de esta generación que
nos obliga a enfrentar nuevos retos y promover

nuevas y mayores garantías en los procesos judiciales. Estos retos y llamamientos, si son escuchados y acogidos por nuestra Rama Judicial, representan la oportunidad idónea para que la ciudadanía conozca mejor sus derechos y cómo hacerlos valer. Asimismo, nos permiten profundizar en el imperativo que es el acceso a la justicia en nuestro País y en el compromiso de la Rama Judicial con la transparencia.

Muchos de los aspectos implicados en el acceso a la justicia pueden ser atendidos y solucionados mediante la apertura de los procedimientos judiciales a mayores sectores de la sociedad a través de proyectos como el Programa Experimental para el Uso de Cámaras Fotográficas y Equipo Audiovisual de Difusión por los Medios de Comunicación en los Procesos Judiciales (PECAM). En primer lugar, abrir los procesos a un público virtual —no restringido al espacio de una sala— tiene un valor enorme como recurso educativo. Se trata de una educación dirigida principalmente a la ciudadanía quien, en muchas ocasiones, desconoce los procedimientos legales mediante los cuales se adjudican los casos y las controversias que les afectan. Proyectos como el PECAM permiten que la ciudadanía tenga acceso de primera mano al funcionamiento de su sistema de justicia. Sin este tipo de acceso, aquellas personas que nunca han acudido a los tribunales están sujetas a las impresiones que le transmitan terceras

personas -impresiones que no siempre se ciñen a la realidad de los procesos y a lo acontecido en las salas-, así como a las concepciones erróneas que suelen predominar acerca del proceso judicial.

En segundo lugar, incorporar estos mecanismos fortalece la confianza en nuestro sistema de justicia y en sus actores. En tiempos en los que, con razón o sin ella, muchos cuestionan la confiabilidad del sistema de administración de la justicia, transmitir los procedimientos permite que la ciudadanía entienda mejor las decisiones que toman los jueces, pues los expone al curso ordinario de la presentación de prueba y de argumentación mediante el cual se forma la determinación judicial. De la misma manera, la transmisión directa de los procedimientos permite mantener un récord público y accesible que exige un mayor grado de preparación y rigurosidad por parte de los actores del proceso incluyendo los representantes legales de las partes y, por supuesto, los jueces. La fidelidad y el acceso al proceso cobran también mayor preeminencia para los medios de comunicación quienes deben propiciar la transparencia a través del recuento objetivo de los sucesos ante los tribunales.

Y en tercer lugar, al expandir la transmisión de los procedimientos judiciales permitimos una mayor fiscalización de la Rama Judicial. El acceso a la información es fundacional y fundamental para una

democracia pues sin ella no se pueden ejercer los derechos y los deberes inherentes a la condición de ciudadana o ciudadano. La Rama Judicial, en su importantísimo rol de impartir justicia, debe ser la más apegada a estos valores y servir como su garante.

Ya en 1974, en el *American Bar Association Journal* se expresaba que "sin la cobertura televisiva, el medio de comunicación noticiero principal del país, el sistema judicial está lentamente cayendo en la oscuridad". 60 ABAJ 294 (1974) (traducción nuestra). Hoy, al tomar en cuenta el desarrollo tecnológico con el que contamos y la transformación de nuestra sociedad en una mucho más interconectada y con un acceso privilegiado a la información, la advertencia lanzada por el *ABA Journal* es más real y urgente que nunca. La disponibilidad y el acceso a la tecnología que caracteriza nuestras vidas y nuestro mundo fomenta el reclamo de la ciudadanía por una mayor transparencia e información sobre los procesos judiciales. Así pues, los miembros de la judicatura no podemos contribuir a una percepción de que la Rama Judicial trabaja fuera de tiempo, rezagada, hermética y con prácticas que rehúsan evolucionar para adaptarse a los nuevos cambios.

Mediante la aprobación el 19 de abril de 2013 del Canon 15 de Ética Judicial, 4 LPRA Ap. IV-B, y del PECAM, este Tribunal dio un paso significativo en el esfuerzo por modernizar la Rama Judicial, proveyendo para la

transmisión en directo de los procedimientos ante las Salas de Recursos Extraordinarios del Centro Judicial de San Juan, entre otros. La experiencia fue muy positiva, como lo demuestra el Informe que al respecto preparó el Secretariado de la Conferencia Judicial y Notarial.[42] Criterios tan importantes como la transparencia, la confianza en el sistema de justicia y la mayor familiarización de la ciudadanía con sus derechos y el modo de hacerlos valer resultaron favorecidos como consecuencia del proyecto experimental que permitió la transmisión en directo de los procedimientos judiciales.[43]

Hoy, transcurrida la fase experimental en las Salas de Recursos Extraordinarios y evaluados los informes sobre su efectividad, este Tribunal aprueba la presente Resolución para, entre otras consideraciones, extender el PECAM a la Sala 901 de Asuntos de lo Civil del Centro Judicial de San Juan y a la Sala 1104 de Asuntos de lo Criminal de ese mismo Tribunal.  Aunque estoy de acuerdo con estos pasos afirmativos, considero que los mismos no satisfacen por completo los reclamos de apertura, transparencia y accesibilidad que exigen las ciudadanas y los ciudadanos de nuestro País. Si bien hemos empezado a adelantar en el largo camino de la apertura, me reitero en que reducir la brecha tecnológica para promover la transparencia en la

---

[42] *Evaluación sobre la efectividad del uso de cámaras fotográficas y de equipo audiovisual de difusión por los medios de comunicación en los procesos judiciales*, Secretariado de la Conferencia Judicial y Notarial, 2014.
[43] Íd., en la pág. 231.

Rama Judicial no puede limitarse a cuatro salas en particular.

La coyuntura exige hacer más y de una manera decidida y tenaz integrar todas las herramientas disponibles para expandir la transparencia en nuestra Rama. Y es que las circunstancias históricas dictan que la meta sea la más ambiciosa de todas: acceso directo y amplio para todas las ciudadanas y ciudadanos a la administración de la justicia, respaldado por una tecnología incesantemente cambiante. Por ello estimo que este Tribunal no puede detenerse aquí, ni puede caminar a paso lento. Sólo así podremos hablar de un acceso a la justicia realmente abarcador.


                              Maite D. Oronoz Rodríguez
                                   Jueza Asociada